A91A0864. WORLEY v. THE STATE.
(411 SE2d 760)

BEASLEY, Judge.

Following the denial of his motion for new trial, Worley appeals his conviction for the armed robbery of a fast food restaurant in Dalton, OCGA § 16-8-41. He and two co-defendants were charged with using a pistol and a large stick to commit the crime.

1. Approximately six weeks after appellate counsel (who was also trial counsel), filed the brief and enumerations of error, Worley filed a supplemental brief and supplemental enumerations of error pro se. Under the 1983 State Constitution, Art. I, Sec. I, Par. XII, a defendant does not have the right to simultaneous representation by counsel and self. Therefore, the supplemental errors raised will not be considered. *Cook v. State*, 195 Ga. App. 69, 70 (2) (392 SE2d 556) (1990).

2. Appellant contends that the trial court erred in denying his motion for a mistrial because the jury was permitted to hear evidence of similar transactions to which appellant could not lawfully be connected as the perpetrator, unfairly placing his character in issue in violation of OCGA § 24-2-2. On appeal it is also urged in the brief that there was a deficiency in the similarity of the crimes as well. This latter claim is not addressed because "[e]numerations may not be enlarged by brief on appeal to cover issues not contained in the original enumeration. [Cit.]" *Newberry v. State*, 184 Ga. App. 356, 357 (1) (361 SE2d 499) (1987). The only issue is identity.

The State moved to present evidence of eight other armed robberies of fast food restaurants. Appellant challenges admission of evidence of three of them — one occurring in Cobb County on February 4, 1989, one in Cobb County on March 4, 1989, and one in Florida on April 11, 1989. Testimony describing the transactions was presented to the jury. Compare *Stephens v. State*, 261 Ga. 467 (405 SE2d 483) (1991). Co-defendant Hufstetler, who was tried with appellant, was granted a mistrial because of lack of evidence that he was a perpetrator in certain of the other transactions.

First, although appellant lodged a continuing objection to introduction of the similar transaction evidence, he, unlike Hufstetler, failed to move for a mistrial at any time contemporaneous with the

objected-to testimony. His first request for a mistrial based on the similar transaction evidence came at the close of all the evidence and in conjunction with the renewal of Hufstetler's motion. In fact, appellant's counsel stated that he did not know if he had prior to that time moved for a mistrial. "A motion for mistrial not made at the time the testimony objected to is given is not timely and will be considered as waived because of the delay in making it. *Peoples v. State*, 184 Ga. App. 439 (361 SE2d 848) (1987)." *Thaxton v. State*, 260 Ga. 141, 143 (5) (390 SE2d 841) (1990).

Even if the motion had been timely, it was properly denied.

The evidence construed in favor of the verdict showed the following. On February 23, 1989, during normal business hours, two Caucasian men dressed in camouflage, with their faces covered by hats used as masks with cut-out eye holes, entered a fast food restaurant in Dalton. One man wielded a silver pistol and instructed everyone to get on the floor. He jumped over the counter separating the public area from the kitchen and demanded to see the manager. The manager was forced at gunpoint into the office and forced to remove money from a floor safe. The robber held out an open black bag and instructed the manager to place the money in it. The robber asked if there was more money and the manager responded that there was some in a file cabinet. The manager opened the file cabinet and surrendered that money also. The manager was then told to get on the floor. During this time, the other man remained in the front, brandishing a large stick and watching the employees and customers. After getting the money, both men left.

Approximately two weeks later, a police officer attempted to make a traffic stop of appellant's vehicle. Appellant sped away. When the officer caught up, the vehicle was stopped and its occupants had fled. A search of the vehicle revealed two stocking caps, a wooden stick, a duffle bag, a canvas brown bag with straps and containing a stocking mask, camouflage clothing, a black vinyl or leather bag, and a court document addressed to appellant. Appellant told a passenger in the car during the chase that he did not want to be stopped because there were items in the trunk which had been used in some armed robberies.

The restaurant manager identified the camouflage clothing as resembling what the gunman wore, the black bag as the one that the gunman had him put the money in, the stick as the one used, and a mask as one that the gunman wore.

A customer at the time of the robbery was able to see straight into the gunman's blue eyes through the mask eye holes and testified at trial that appellant had about the same eye color.

Appellant's co-defendant Roland confessed to being the "stick man" in the robbery and identified appellant as the gunman and Huf-

stetler as the driver of the getaway vehicle, which was appellant's car. Roland as the State's witness described the robbery consistently with what was related by other State's witnesses. He further gave detailed testimony about a multi-state crime spree from approximately January 1989 to April 1989, when he and Hufstetler lived together and committed a string of armed robberies.

The evidence of appellant as a perpetrator in the three other armed robberies consisted of the following.

(a) February 4, Cobb County. Evidence of this armed robbery first surfaced during the cross and re-direct examination of Roland. Although a co-participant in many of the transactions, Roland was not accused of being a participant in this instance. Roland related that appellant told him about committing the robbery, including that appellant exited the restaurant through the drive-through window. Later an investigating officer testified that an unusual fact of the robbery was that the lone perpetrator entering the restaurant, who was wearing a mask and camouflage fatigues, effected his getaway by diving through the drive-through window.

Inasmuch as Roland was not an alleged accomplice in this robbery, his testimony corroborated by that of the officer provided a valid basis on which the jury could conclude for its limited evidentiary value that appellant was the perpetrator of the transaction being tried. Compare *Hill v. State*, 236 Ga. 831, 832 (225 SE2d 281) (1976) in which the defendant was identified as a participant in other alleged armed robberies solely by the testimony of one alleged accomplice.

(b) March 4, Cobb County. Co-defendant Roland testified that he, appellant and Hufstetler committed the robbery. However, inasmuch as Roland was an accomplice, the State required more to identify appellant as the perpetrator. See subsection (a) supra. There was more.

The restaurant's assistant manager testified that two men ran past the drive-through window with one entering the restaurant, slamming down a wooden stick, and giving instructions to everyone. At first the crew thought they knew the men and that it was a joke. The assistant manager felt a gun against his skin and was told by the gunman to go back to the safe. The gunman was wearing an army jacket and a homemade pullover mask with cut-out eye holes. The assistant manager was directed to open the floor safe and put the money in a white cloth bank bag and/or a "black bowling bag." At trial, he identified the black bag, stick, and masks recovered from appellant's car as resembling those used in the earlier robbery.

A year or two prior to the March 4 crime, appellant had worked for that restaurant for about three months. When the assistant manager had worked with appellant, he noticed that appellant had an accent. During the robbery, the assistant manager observed that the

gunman had a real deep accent. Although the man could not identify appellant as the gunman with certainty, he suspected appellant.

The assistant manager's testimony sufficiently identified appellant as a perpetrator of the earlier crime.

(c) April 11, Holly Hills, Florida. Roland testified that he and appellant committed the robbery. He, along with appellant and one Walker, went to Daytona, Florida, so that Roland could visit his family. Roland related that he and appellant (Walker was not involved) used as the getaway vehicle a truck they had taken from a man they caught breaking into Roland's mother's house.

Walker's testimony placed appellant and Roland in a nearby Florida location at the time of the armed robbery; Holly Hills was a neighboring community to Daytona. Walker further testified that during the relevant time frame, appellant and Roland left together, were gone for a period of time, and returned with a sum of money they did not have previously.

The restaurant manager's testimony showed that the robbery occurred in a similar manner to the one on trial. The gun-wielding perpetrator jumped over the counter, asked for the manager, forced him back to the office, made him open the safe, and then told him to lie down. This time the perpetrator was not dressed in camouflage, nor was a black bag or stick used, but these items had been confiscated from appellant's car prior to April 11.

There was ample circumstantial evidence apart from testimony by accomplice Roland that appellant committed the Florida robbery.

Even if the admission of the three other questioned armed robberies had been error it would have been harmless under the standard in *Johnson v. State*, 238 Ga. 59 (230 SE2d 869) (1976), in light of the unquestioned linkage of appellant to at least three other armed robberies plus the quantity of direct and circumstantial evidence pointing to appellant as the gunman in the armed robbery on trial. See *Durden v. State*, 169 Ga. App. 777, 778 (1) (315 SE2d 291) (1984).

3. Appellant contends that the trial court erred in denying his motion for a mistrial because of the irregularity and conduct of a juror. Citing principally *Evans v. State*, 196 Ga. App. 1 (395 SE2d 342) (1990), appellant's sole complaint is that the court failed to question the remaining jurors as to whether or not they had been affected by anything the subject juror might have related in the jury room or any discussion in the matter in their presence in the courtroom.

During a break in the evidentiary phase of the trial a juror sent the court the following note: "Could you ask [Roland] if he and two others, [Appellant and Hufstetler], went into [another named restaurant] on Walnut Avenue either before, or after the robbery at [the subject fast food restaurant]? Thank you." The court made counsel aware of the question and Hufstetler's attorney asked the court to

inquire of the jury if anyone had changed his or her mind since voir dire and thought that he or she knew something about the case outside what had been heard in the courtroom. The jury was returned, the court read the note, and inquired about who had sent it.

The juror identified herself and the court asked if, since voir dire, she had come to realize she might know something about the case. The juror responded: "I think so, but I — I tried to check my dates to find out if I was at a certain place at a certain time and haven't been able to check the date yet. And I'm not even sure I'd be able to really check the date. But, something is just kind of with me." The court asked the juror her name and if she had discussed her question with the other jurors. The juror responded that she had not. The remaining jurors were removed from the courtroom.

The court asked the juror why she had asked the question. She responded that her only reason was that she had been in this other restaurant one evening and that Worley and Hufstetler looked familiar, i.e., she thought she might have seen them in that restaurant. The juror could not be sure of the date she had been in the restaurant. The court inquired what difference it would make to the juror if in fact the men had been there. The juror responded that if she had seen them in the other restaurant on the day of the armed robbery on trial, it would place the men in Dalton at that time. Extensive questioning continued, with the court repeatedly asking the juror if she could proceed with the case and base her decision solely upon the evidence heard in court. The juror consistently answered in the affirmative. The juror was sent out and the court asked counsel if they had any questions for her. Appellant's counsel stated that he did and the court returned the juror to the courtroom.

Appellant's counsel asked the juror if, after hearing what she had at trial and remembering what she had observed in the other restaurant, she believed that the men had been casing the robbed restaurant. The juror answered "no" because she was unsure of the date she might have seen the men. Hufstetler's counsel asked if the juror would doubt any testimony by his client or Worley that they had not been in Dalton on the day of the armed robbery. The juror indicated she would be open minded in assessing any such testimony. She was again removed from the courtroom.

Counsel for both men contingently moved for a mistrial on the basis of the juror incident in the event the court refused to grant a mistrial based on introduction of the similar transaction evidence. The court reserved ruling, stating that a curative instruction would take care of what little had been said in front of the jury and that it would also reserve decision on whether or not to substitute the alternate juror. Defense counsel made no request that the court question the remaining jurors.

Following the close of the evidence, the court brought the juror back for further questioning. She reiterated that she had not spoken of the situation to the other jurors and that she could and would base her decision solely upon the evidence heard in court. Counsel questioned her no further.

Appellant's counsel moved for a mistrial "because of the fact of the Court having had a conversation with [the subject juror] regarding her question and the inference that it gives to the other jurors." The motion was denied, the subject juror remained on the case, and the court in its final charge instructed the jury to disabuse itself of anything concerning the note inasmuch as it had nothing to do with the evidence or decision in the case.

First, the deficient procedure or questioning in regard to the remaining jurors which is now appellant's sole claim was not raised before the trial court. When a point of alleged error is not brought before the trial court, it presents nothing for review on appeal. *White v. State*, 174 Ga. App. 699, 701 (3) (331 SE2d 72) (1985).

Moreover, unlike *Evans*, in which it was apparent that a juror had communicated to her fellow jurors that she knew defendant well enough to influence her decision, here the subject juror consistently maintained that she had not communicated any information whatsoever to her fellow jurors and that she could and would base her decision solely on the evidence presented. Furthermore, the reading of the note and the cursory and vague statements regarding the matter in the jury's presence did not apprise the remaining jurors of the nature of their colleague's concern. In fact, it was well into the court's questioning of the subject juror outside the jury's presence before the court and counsel understood the significance of her note.

Under such circumstances the record establishes beyond a reasonable doubt that no harm flowed to appellant from the incident. See *Evans*, supra, citing the standard in *Lamons v. State*, 255 Ga. 511, 512 (340 SE2d 183) (1986).

*Judgment affirmed. Carley, P. J., and Judge Arnold Shulman concur.*

DECIDED OCTOBER 21, 1991 —
RECONSIDERATION DENIED NOVEMBER 1, 1991 — ▇▇▇▇▇▇▇▇

*J. Tracy Ward*, for appellant.
*Jack O. Partain III, District Attorney, Kermit N. McManus, Assistant District Attorney*, for appellee.