## A01A1008. WALKER v. THE STATE.

(553 SE2d 319)

ELDRIDGE, Judge.

A Clarke County jury found Derrick Walker guilty of armed robbery, four counts of aggravated assault, and kidnapping, which charges arose from acts Walker perpetrated at the TJ Maxx store on Huntington Road in Athens. He appeals, claiming four alleged errors of law require reversal of his convictions. Upon review, we affirm as to all counts, except the separate judgment of conviction and sentence under Count 6 of the indictment are vacated.

1. Walker first contends that "[t]he superior court erred when it permitted counsel for the State to communicate directly with a juror during jury deliberations by asking her a question." This contention is meritless.

During jury deliberations, one juror expressed doubt about her ability to continue deliberating, "[b]ecause I feel that I cannot fulfill the duties of a juror right now." The trial court questioned the juror and permitted both the defense and the State to ask questions. The defense declined the offer, and the State asked the juror if anyone had attempted to contact her about the case. The juror answered in the negative and otherwise failed to provide a legal reason for dismissal. The juror was returned to the jury room, and the defense objected to the prosecutor's question, providing no basis for such objection other than "I think that you have no choice. She disagrees with the other jurors or some of the jurors, that's not — that's exactly what the 11th Circuit ruled."[1] The defense objection to further service by the juror was overruled. No additional comments, objections, or motions were made with regard thereto, including at the motion for new trial.

OCGA § 15-12-172 authorizes the trial court to exercise its discretion with regard to excusing a juror from the panel.[2] Such discretion is not abused by giving both parties an opportunity to voir dire a juror as to his or her reasons for wanting to be excused.[3] Before this Court, Walker claims that the prosecutor's question "insinuated that Walker was the sort of person who would tamper with a jury." However, this claim was not raised in the court below, and the question on its face makes no such insinuation. Moreover, Walker did not ask for mistrial or request any other form of relief. We generally will not grant more appellate relief than that actually prayed for at trial.[4] We

---

[1] On appeal, no Eleventh Circuit case has been cited to this Court with regard to any issue.

[2] *Baptiste v. State*, 190 Ga. App. 451, 453 (2) (379 SE2d 165) (1989).

[3] See, e.g., *Pennie v. State*, 271 Ga. 419, 421 (520 SE2d 448) (1999) (trial court offered defense and prosecutor opportunity to participate in OCGA § 15-12-172 inquiry).

[4] *Morrill v. State*, 216 Ga. App. 468, 474 (454 SE2d 796) (1995).

decline to do so here.[5]

2. In his next enumeration of error, Walker challenges the trial court's refusal to charge the jury on four lesser included offenses: robbery by intimidation, theft by taking, simple assault, and pointing a pistol at another. This challenge is meritless.

The State's evidence showed that Walker approached two employees of TJ Maxx, Ameer Sattar and Natalie Price, as they were preparing to open the store on the morning of October 14, 1998. He asked them if they had change so that he could buy a newspaper. They replied in the negative and moved toward the store to unlock the outer door. Thereafter, Walker came up behind them and pointed a gun at the two. He ordered them to unlock the inner door to the store. He then ordered them to "run" to turn off the alarm system, which was located in the "cash room." Walker then ordered Sattar to open the safe. Walker tied both employees up with shoestring and put the money from the safe into a trash can. As he attempted to leave the store with the money, another employee, Jon Weaver, who was "running ten minutes late," arrived. Walker placed the gun against Weaver's head, forced him to another area of the store, and tied him up. During this time, the employees in the cash room had gotten free of their bonds and had called 911. The police arrived while Walker was still in the store, and he was arrested. A pistol was found on a shelf in the store a foot from the arrest location; the weapon was fully loaded with a round in the chamber. The money was recovered from a trash can that had been placed in a shopping cart located between the clothing aisles.

The defense consisted solely of Walker's testimony. Therein, he admitted that he robbed the TJ Maxx. He testified that the robbery was the result of his heroin addiction: "I don't know why I robbed the store. I was just high, man." He testified that he had been carrying the pistol since the night before when he had been "hanging out" at the Latin Quarter, a nightclub in Athens: "I had the pistol with me on that particular day, that morning, that particular night." Walker also testified that he got angry because the TJ Maxx employees had refused to give him change in order to buy a newspaper: "I had a five

---

[5] Before this Court, Walker argues that the trial court "abruptly stopped Walker's trial counsel before he had the opportunity to move for mistrial or any other remedy." We find this assertion more than a little disingenuous given what the record reveals as the unusually contentious behavior of Walker's trial counsel, who hesitated not at all in moving for everything from the judge's recusal for an alleged ex parte communication, which turned out to have no basis in fact ("[Defense counsel:] I'm going to put you on the witness stand, I'll call you as a witness, Your Honor."), to a continuance based on unsubstantiated allegations about the State's case ("[Defense counsel:] They're doing things that I think are highly unethical and illegal actually by running jail house snitches in there and then getting letters that he writes and using them in this."). The record amply demonstrates trial counsel's ability to fashion opportunities to make known his positions on the issues.

dollar bill. I asked them for some change. They said they didn't have it. I patted on my pockets again for some change and again I looked back I seen them inside the store and I just — it was more or less, I guess, a personal thing. They didn't give me no change and I just got mad, just ran over into the store." Walker testified that he pointed the pistol at the employees: "[Prosecutor:] You had a gun, you pointed it at them; correct? [Walker:] Yes, I did."

Walker's sole defense was that he was high on heroin and could not form the requisite intent to commit the crimes as charged:

> I was so high, man, I didn't know if I was flying or coming or what, man. I was high. I was out of it. Heroin is a downer. . . . Man, I was — man, I was high as the sky somewhere, man. . . . Everything that happened in that store I didn't even know what happened until I heard the witnesses' testimony yesterday, sir. I did not know what happened until I heard they testimony yesterday. . . . That's why I went and took it to a jury, to let the people decide. I'm not going to sit here, sir, and tell you that I went in that store to rob no store and do something like that. I was high. I don't know what I was doing.

In the presentation of this defense, Walker admitted that "I think it might have pretty much happened the way the [State's] witnesses yesterday described, that's probably about the best recollection of the situation."

(a) We find no error in the trial court's refusal to give jury charges on robbery by intimidation, theft by taking, simple assault, or pointing a pistol at another. Walker was not entitled to such charges because the evidence established without dispute the commission of the greater offenses as charged.[6] Walker admitted that he pointed the pistol at the employees; that thereafter he robbed the TJ Maxx; that he used the pistol in the furtherance thereof; and that the State's witnesses were correct in their version of events. Such evidence established the commission of the offenses as charged or no offense at all, because Walker was allegedly unable to form the requisite intent due to heroin ingestion.

(b) Notably, Walker's alleged inability to form the necessary scienter because he was too "high" would apply to the lesser included offenses, as well — each of which requires the intent to commit a

---

[6] See *Tew v. State*, 246 Ga. App. 270, 274 (5) (539 SE2d 579) (2000); *Espinoza v. State*, 243 Ga. App. 665, 667 (534 SE2d 127) (2000); *Thomas v. State*, 226 Ga. App. 441, 444 (8) (487 SE2d 75) (1997); *Comley v. State*, 218 Ga. App. 520, 521 (2) (462 SE2d 432) (1995).

theft or to do the prohibited act, itself.[7] Walker, however, claimed he had no idea what he was doing at any point in time; he was "cuckoo over his head in dope, high out of his mind, don't know what he's doing." For this reason, as well as the reasons stated above, we also find as meritless Walker's separately enumerated error that he was entitled to a jury charge on the lesser included offense of false imprisonment for the act of placing a pistol against Weaver's head, forcing him to walk to another part of the store, and thereafter tying him up.

3. Walker was convicted and sentenced, inter alia, for armed robbery; aggravated assault/deadly weapon on Sattar; aggravated assault/deadly weapon on Price; and aggravated assault/intent to rob on Price. He contends the aggravated assault convictions should have merged with the armed robbery conviction. Under the facts of this case, we agree only in part.

Aggravated assault does not merge with armed robbery as a matter of law, although it may do so as a matter of fact.[8] Simplistically, the inquiry is whether the facts of one offense are "used up" while proving the elements of the other offense.[9]

(a) Here, Walker was convicted and sentenced on two counts of aggravated assault/deadly weapon for placing both Sattar and Price "in reasonable apprehension of immediately receiving a violent injury"[10] by pointing a deadly weapon at them.[11] He did so when he approached them outside the TJ Maxx store. Walker testified that he pointed the pistol at the two employees, not because he needed money or intended to rob the store, but because he was angry that they would not give him change for a $5 bill so he could buy a newspaper: "it was a personal thing." The aggravated assault was completed at that time.[12] It was thereafter that Walker entered the store and used the gun to order Sattar and Price to turn the alarm off. And it was only thereafter that the intent to rob manifested when Walker pointed the gun at Sattar and ordered him to open the store safe: "I'm not going to sit here, sir, and tell you that I went in that store to rob no store and do something like that. I was high. I don't know what I was doing." Accordingly, there are sufficient facts of record to support the aggravated assault/deadly weapon convictions independent of the armed robbery conviction. Since the aggravated assault/deadly weapon offenses were complete prior to the use of the gun to rob the store, one offense is not "used up" in proving the other.

---

[7] OCGA §§ 16-5-20; 16-8-2; 16-8-41 (a); 16-11-102.

[8] *Rooks v. State*, 238 Ga. App. 177, 179 (2) (518 SE2d 179) (1999).

[9] See, e.g., *Brown v. State*, 246 Ga. App. 60, 63-64 (539 SE2d 545) (2000); OCGA § 16-1-7 (a) (1).

[10] OCGA § 16-5-20 (a) (2).

[11] OCGA § 16-5-21 (a) (2).

[12] *McCulley v. State*, 273 Ga. 40, 43 (3) (b) (537 SE2d 340) (2000).

(b) The same cannot be said of Walker's separate conviction for aggravated assault/intent to rob on Price. The same acts proved both the armed robbery and the aggravated assault/intent to rob as a matter of fact. Walker's conviction thereon should have merged with the armed robbery conviction, just as the trial court merged into the armed robbery conviction Walker's separate conviction for aggravated assault/intent to rob on Sattar. Accordingly, we vacate Walker's separate judgment of conviction and sentence under Count 6 of the indictment for aggravated assault/intent to rob on Price.[13]

4. Our holding in Division 2 (b) is dispositive of Walker's enumeration of error no. 4.

*Judgment affirmed as to all counts except Count 6, which judgment of conviction and sentence are vacated. Andrews, P. J., and Miller, J., concur.*

DECIDED AUGUST 1, 2001 —
RECONSIDERATION DENIED AUGUST 16, 2001 — 

*Cook, Noell, Tolley, Bates & Michael, Edward D. Tolley, Ronald E. Houser,* for appellant.

*Kenneth W. Mauldin, District Attorney, Phillip C. Griffeth, Daniel F. Piar, Assistant District Attorneys,* for appellee.

---

[13] *Kelly v. State,* 188 Ga. App. 362, 363 (3) (373 SE2d 63) (1988).