### A03A1436. McCONNELL v. THE STATE.
(589 SE2d 271)

MIKELL, Judge.

Mickey Charles McConnell was convicted of burglary (Counts 1 and 2), financial transaction card theft (Counts 3, 4, 5, 6, and 9), and theft by receiving stolen property (Counts 7 and 8). He was sentenced as a repeat offender to serve, without the benefit of parole, consecutive twenty-year terms for each burglary, concurrent two-year terms for each credit card theft, and concurrent twelve-month terms for the remaining two charges. McConnell raises 21 enumerations of error on appeal from the order denying his motion for new trial. Because the burglaries merge, we reverse the judgment of conviction and sentence as to Count 2. The remainder of the judgment is affirmed.

1. In his first and second enumerations, McConnell contends that the trial court erred in denying his trial counsel's motions for a continuance and to withdraw.

The record shows that appellate counsel is the third attorney whom McConnell has retained in this matter. Frank Winn represented McConnell at the time he was indicted, on February 23, 2001. One month later, Winn withdrew, and attorney Jay Shreenath entered an appearance on McConnell's behalf. McConnell was arraigned on March 22. Shreenath filed a discovery motion on April 4, and the case was set on the trial calendar for June 25. The state responded to discovery on June 13. On June 18, Shreenath filed a motion to withdraw and a motion for a continuance. The withdrawal motion stated that Shreenath was informed by McConnell in April of his intention to dismiss Shreenath and retain another attorney, but that McConnell had not yet done so.

When the case was called for trial, Shreenath stated that he was unprepared in part because he did not have sufficient time to investigate the information received in discovery from the state. However, counsel also told the court that McConnell refused to cooperate with him, making it difficult for trial counsel to prepare. The trial court denied both the motion to withdraw and the motion for a continuance, finding that "Mr. McConnell's difficulties are largely of his own making."

"A motion for continuance based on counsel's claim of insufficient time to prepare for trial is addressed to the sound legal discretion of

the trial court."[1] The defendant's conduct "is obviously relevant and is a proper consideration for the judge in the exercise of his discretion. The reason for this is to prevent [the defendant] from using discharge and employment of counsel as a dilatory tactic."[2] Moreover, "[i]t is a rule of criminal procedure . . . that 'in all cases, the party making an application for a continuance must show that he has used due diligence.' OCGA § 17-8-20."[3] Where defendant negligently failed to employ counsel promptly, "the burden of convincing the court that due diligence has been exercised is that of the movant."[4] McConnell failed to sustain this burden. He made no showing of any attempt to hire new counsel after expressing his displeasure with Shreenath. Further, McConnell has not suggested what evidence or witnesses he would have put forth in his defense had counsel had more time to prepare.[5] It follows that the trial court did not abuse its discretion in denying his motion for continuance.

Finally, McConnell presents no reasoned argument in support of his claim that the trial court erred in denying counsel's motion to withdraw. Therefore, McConnell's second enumerated error is deemed abandoned.[6]

2. McConnell's enumeration no. 17 asserts that the trial court erred in charging the jury prior to closing arguments. OCGA § 5-5-24 (b) provides in pertinent part that the court "shall instruct the jury after the arguments are completed." The Supreme Court has held that this requirement is mandatory.[7] However, in the case sub judice, counsel consented to the procedure. "A party cannot complain of error that his own conduct aided in causing."[8]

3. McConnell enumerates three errors regarding the trial court's handling of a juror's disclosure of her connection to a check introduced into evidence by the state. The transcript reveals that a payroll check drawn on Entertainment Design Group Company ("EDG") was found along with numerous other items in McConnell's possession

---

[1] (Citation and punctuation omitted.) *Patterson v. State*, 202 Ga. App. 440, 441 (1) (414 SE2d 895) (1992).

[2] (Citation omitted.) *Huckaby v. State*, 127 Ga. App. 439, 440 (1) (194 SE2d 119) (1972); accord *Mallory v. State*, 225 Ga. App. 418, 422 (4) (483 SE2d 907) (1997) ("'A criminal defendant will not be permitted to use the discharge of counsel and employment of another as a dilatory tactic in postponing or avoiding trial of the issue.'") (citation and punctuation omitted).

[3] *Lee v. State*, 254 Ga. App. 417, 419 (2) (562 SE2d 800) (2002).

[4] *Tinker v. State*, 218 Ga. App. 792, 794 (1) (b) (463 SE2d 368) (1995).

[5] See *Marion v. State*, 224 Ga. App. 413, 416 (1) (480 SE2d 869) (1997).

[6] See Court of Appeals Rule 27 (c) (2); *Goodman v. State*, 251 Ga. App. 350, 351-352 (5) (553 SE2d 179) (2001).

[7] *Griffith v. State*, 264 Ga. 326, 327 (2) (444 SE2d 794) (1994).

[8] (Citations and punctuation omitted.) *Smith v. State*, 202 Ga. App. 362 (414 SE2d 504) (1991).

during the search incident to his arrest. After the direct examination of the deputy sheriff who conducted the search, the trial court excused the jury to consider an objection by McConnell. At that time, Juror No. 1 apparently notified the bailiff that she owned EDG.

Defense counsel immediately moved for a mistrial. The trial court denied the motion, indicating that it preferred to disqualify the juror and impanel an alternate. However, the state objected to the juror's disqualification because McConnell was not charged with a crime in connection with the check and Juror No. 1's name did not appear on it. The court reserved ruling until the following day. Prior to the evening recess, defense counsel requested that the court voir dire Juror No. 1 to ascertain whether she had revealed her connection to the evidence to her fellow jurors. The trial court did not make a ruling on the request at that time, but instructed the jury at length not to discuss the case with each other or anyone else.

When proceedings resumed the next day, the court rejected the state's argument, holding that the prejudice to the defendant resulting from the potentially tainted juror outweighed any prejudice to the state. Accordingly, the court denied the motion for mistrial but granted the alternative remedy of disqualifying the juror and impaneling an alternate. However, over trial counsel's objection, the court decided to inform the jury as to the reason for the removal of Juror No. 1. Remarking that the juror had stated her association with EDG in open court, the court expressed concern that leaving the jury in the dark would prejudice the defense. Counsel then requested curative instructions. The court explained to the jury in detail the reasons for its dismissal of the first juror and admonished the remaining jurors not "to draw any conclusions or to try to figure this out further." Defense counsel interposed no further objections.

(a) In his tenth enumeration, McConnell argues that the trial court erred in denying his motion for mistrial. McConnell concedes in his appellate brief that he waived his right to appellate review of the trial court's denial of his motion for mistrial by failing to renew the motion after the court gave curative instructions.[9] In any event, the decision whether to grant or deny a motion for mistrial rests within the trial court's discretion, and we will not disturb the court's ruling absent a manifest abuse of that discretion which threatens the defendant's right to a fair trial.[10] There was no abuse of discretion in the instant case. The trial court's removal of Juror No. 1 safeguarded McConnell's right to a fair trial.

---

[9] *Tidwell v. State*, 219 Ga. App. 233, 237 (4) (464 SE2d 834) (1995).

[10] *Moss v. State*, 200 Ga. App. 253, 254 (407 SE2d 477) (1991); accord *Weaver v. State*, 178 Ga. App. 91, 93 (2) (341 SE2d 921) (1986).

(b) In enumeration no. 12, McConnell contends that the trial court reversibly erred by failing to question Juror No. 1, as trial counsel requested, to determine whether the remaining jurors were tainted by her disclosure. The state opposed the request, arguing that such questioning would violate OCGA § 15-12-167, which provides that a challenge for cause generally must be raised before the jury is sworn and evidence is submitted. Defense counsel made no argument. Thus, persuaded by the state, the court concluded that it could not question the juror. The court's conclusion was incorrect. "OCGA § 15-12-167 does not establish an inflexible rule. That statute must be considered in connection with the general authority conferred upon a trial court by OCGA § 15-12-172 to discharge a juror and replace him with an alternate."[11] Furthermore, "OCGA § 15-12-172 authorizes the trial court to exercise its discretion with regard to excusing a juror from the panel."[12] This discretion includes the authority to conduct further investigation to determine jury prejudice, where, as here, the reason for the juror's disqualification does not come to her attention until after evidence has been presented.[13] However, the court's erroneous conclusion does not require reversal of McConnell's conviction. Although McConnell argues that the jury was tainted by the first juror's disclosure, he has shown no evidence of any such prejudice. Therefore, he has not sustained his burden to prove error affirmatively by the record. "Harm cannot be shown by mere speculation and conjecture unsupported by the record."[14] In any event, the jury had been instructed prior to the presentation of evidence not to discuss the case with their fellow jurors or anyone else, and "qualified jurors under oath are presumed to follow the trial court's instructions."[15]

(c) McConnell argues in enumeration no. 13 that the trial court was obligated, absent a request, to question the remaining jurors to determine whether they were aware of Juror No. 1's disclosure to the bailiff, and if so, whether they could remain impartial. As trial counsel made no request that the court question the remaining jurors, McConnell has waived his thirteenth enumerated error. "When a point of alleged error is not brought before the trial court, it presents nothing for review on appeal."[16]

4. In enumeration no. 16, McConnell claims that he was denied a fair trial by the state's failure to disclose Juror No. 1's relationship

---

[11] (Citations omitted.) *Reynolds v. State*, 271 Ga. 174, 175 (2) (517 SE2d 51) (1999).

[12] (Footnote omitted.) *Walker v. State*, 251 Ga. App. 217 (1) (553 SE2d 319) (2001).

[13] *Reynolds*, supra; *Tucker v. State*, 253 Ga. App. 433, 436-437 (6) (559 SE2d 171) (2002).

[14] (Punctuation and footnote omitted.) *White v. State*, 257 Ga. App. 861, 862 (1) (572 SE2d 692) (2002).

[15] (Citations omitted.) *Smith v. State*, 267 Ga. 372, 374 (3) (477 SE2d 827) (1996).

[16] (Citation omitted.) *Worley v. State*, 201 Ga. App. 704, 709 (3) (411 SE2d 760) (1991).

with EDG during voir dire. However, the transcript indicates that the state's attorney was surprised to learn that fact, and McConnell has introduced no evidence that the state was aware of the relationship prior to the juror's disclosure.[17] Therefore, this enumeration is meritless.

5. In his third enumeration, McConnell argues that the trial court erred in failing to order that voir dire be transcribed. But reporting of voir dire is not required in felony cases except those in which the death penalty is sought.[18] In this case, McConnell did not request that voir dire be recorded, and he has cited no authority imposing such a duty upon the trial court absent a request by the defendant.[19] In any event, the questions required under OCGA § 15-12-164 were transcribed and were included in the record on appeal. Finally, McConnell cannot demonstrate prejudice from the failure to record voir dire. "[A] general unspecified hope of reversible error during voir dire does not win a new trial on the ground that a record should have been made so as to accommodate a search for error now buried in unrecorded history."[20]

6. Enumeration nos. 4, 5, 6, 7, 8, 9, 11, 14, 15, 18, and 19 assert that trial counsel rendered ineffective assistance. In order to prevail on such a claim, McConnell must show that his trial counsel's performance was deficient and that the deficient performance so prejudiced him that there is a reasonable probability that, but for counsel's errors, the outcome of the trial would have been different.[21] McConnell must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct.[22] Bearing these principles in mind, we address McConnell's claims.

(a) McConnell first argues that his trial counsel rendered ineffective assistance because he failed to request that voir dire be reported. At the hearing on the motion for new trial, trial counsel testified that he took notes during voir dire; that it is his practice during voir dire to mention all witnesses and locations so that any potential juror's association could be brought out; and that the first juror never stated during voir dire that EDG was her business. McConnell "does not

---

[17] Compare *Tyree v. State*, 262 Ga. 395, 397 (2) (418 SE2d 16) (1992) (prosecutor should have disclosed that four jurors, and wife of fifth juror, were his current or former clients; only one juror disclosed relationship during voir dire).

[18] *State v. Graham*, 246 Ga. 341, 342 (271 SE2d 627) (1980); *Brown v. State*, 225 Ga. App. 49, 52 (3) (483 SE2d 318) (1997).

[19] See, e.g., *Russell v. State*, 181 Ga. App. 624, 625-626 (2) (353 SE2d 820) (1987).

[20] (Footnote omitted.) *Primas v. State*, 231 Ga. App. 861, 863 (2) (501 SE2d 28) (1998).

[21] *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

[22] *Mobley v. State*, 271 Ga. 577, 578 (523 SE2d 9) (1999).

show how the transcription of [voir dire] would have benefitted him, and his failure to demonstrate harm is fatal to his claim."[23]

(b) McConnell claims that trial counsel was ineffective because he failed to inspect before trial the check drawn on EDG. McConnell claims that "[t]his combined with an inadequate voir dire inquiry about jurors' connection to evidence brought about an illegally composed jury that was not impartial." This argument assumes, however, that counsel's inspection of the check would have revealed Juror No. 1's relationship with EDG. Given that the juror's name did not appear on the check, that McConnell was not charged with any crime in connection with this evidence, and that it was not the subject of any of his similar transactions, McConnell has failed to demonstrate that the outcome of his case would have been altered by counsel's inspection of the check.[24]

(c) McConnell asserts that trial counsel improperly conducted voir dire by failing to inquire whether any potential juror had any connection to the evidence. Counsel testified, however, that reviewing each piece of the state's evidence during voir dire would be counterproductive to the defense. Therefore, counsel's actions in this regard were a matter of trial strategy and do not constitute ineffective assistance.[25]

(d) McConnell next claims that trial counsel was ineffective for failing to strike Juror No. 1, either peremptorily or for cause. Because McConnell has failed to show that a reasonable attorney would have learned of the juror's connection to this evidence prior to trial, this enumeration is meritless.

(e) McConnell asserts that trial counsel was ineffective for failing to renew the motion for mistrial after the court's curative instructions not to draw any conclusion from the removal of Juror No. 1. However, as we found in Division 3 (a), the trial court did not abuse its discretion in refusing to grant a mistrial, and McConnell has not shown that the court's curative instructions were insufficient to eliminate any potential prejudice. Therefore, he has failed to demonstrate the requisite harm necessary to prevail on this claim.[26]

(f) McConnell argues that trial counsel was ineffective by acquiescing in the court's failure to question the jurors remaining after the removal of Juror No. 1 to determine their ability to remain impartial. In light of McConnell's failure to present any evidence of jury preju-

---

[23] (Footnote omitted.) *Moore v. State*, 246 Ga. App. 163, 169 (9) (b) (539 SE2d 851) (2000).

[24] *Strickland*, supra.

[25] *Harper v. State*, 232 Ga. App. 224, 227 (2) (d) (501 SE2d 591) (1998).

[26] *Glass v. State*, 255 Ga. App. 390, 404 (10) (h) (565 SE2d 500) (2002).

dice at the hearing on his motion for new trial, he has failed to establish harm flowing from counsel's alleged deficiency.[27]

(g) McConnell asserts that trial counsel was ineffective because he failed to object after the trial court informed the jury concerning the circumstances that resulted in the removal of Juror No. 1. We disagree. When the court announced its intention to enlighten the jury, trial counsel objected, arguing that the disclosure of the affected juror's relationship with a check found on McConnell might generate sympathy for that juror and, consequently, prejudice the remaining jurors against the defendant. After the court overruled counsel's objection, he requested curative instructions. The court informed the jury that Juror No. 1 was being excused because of her association with the company on which a check was drawn that was tendered in evidence. This instruction was a sound exercise of the court's discretion,[28] and trial counsel's subsequent failure to object was obviously a matter of trial strategy. Effectiveness is not judged by hindsight.[29]

(h) McConnell contends that trial counsel was ineffective because he consented to the trial court's charging of the jury prior to closing arguments. In support of his argument that this procedure prejudiced his defense, McConnell cites *Griffith v. State*.[30] But *Griffith* and its progeny address situations in which the trial court fails to repeat its preliminary instructions on the presumption of innocence and the burden of proof in the final charge.[31] Here, by contrast, the trial court fully charged the jury on all applicable principles of law at the close of the evidence. It is unclear under *Griffith* whether the court's decision to do so prior to closing arguments is error. What is clear, however, is that McConnell has failed to set forth any reason why his defense was prejudiced by the procedure. Thus, this enumeration fails the second prong of the *Strickland*[32] test.

(i) Finally, McConnell contends that trial counsel was ineffective because he failed to reserve objections to the trial court's jury charges. But McConnell has not alleged that any errors were committed in the charge. "Failure to object to a court's charge . . . is not ineffective assistance where the appellant does not show how this prejudiced his case."[33]

---

[27] See, e.g., *Deal v. State*, 233 Ga. App. 79, 82 (5) (503 SE2d 288) (1998); *Strickland,* supra.

[28] See generally *Worthy v. State*, 223 Ga. App. 612, 614 (1) (478 SE2d 421) (1996).

[29] *Head v. Ferrell*, 274 Ga. 399, 404 (V) (554 SE2d 155) (2001).

[30] Supra.

[31] Id. at 326-327 (2).

[32] Supra.

[33] (Citation, punctuation and footnote omitted.) *Harris v. State*, 257 Ga. App. 819, 827 (2) (g) (572 SE2d 370) (2002).

7. Enumeration no. 20 asserts that Counts 1 and 2, the burglary offenses, merge as a matter of fact and law. "Under Georgia law, offenses merge and multiple punishment is prohibited if one offense is included in the other as a matter of law or fact."[34]

Count 1 of the indictment charged McConnell with burglary for entering the business premises of Russell and Rhonda Cook, d/b/a Bakery Services, Inc. Count 2 charged him with burglary in that he "entered a room, the office of Rhonda Cook, within the building of another." Each entry was allegedly committed without authority and with the intent to commit a theft therein, as required by OCGA § 16-7-1 (a).[35] Although the state contends that Bakery Services, Inc., and Rhonda Cook were separate victims and that two unlawful entries occurred, the evidence shows the commission of only a single offense.[36] Rhonda Cook testified that her business premises contained a reception area, eight offices, a kitchen, and a warehouse. On Friday, January 26, 2002, at 10:00 a.m., she was walking back through the kitchen from the warehouse and saw McConnell step out of her office. He asked Cook whether she was hiring. Cook said no, and McConnell walked out the front door. Cook immediately discovered that McConnell had stolen her wallet. She went to the door and told him to come back. McConnell did as Cook requested and returned her wallet. Cook testified that at the time of the crime, her business was not open to the public, but people occasionally walked in from the street.

"[F]or separate offenses charged in one indictment to carry separate punishments, they must rest on distinct criminal acts. *If they were committed at the same time and place and parts of a continuous criminal act*, and inspired by the same criminal intent, they are susceptible of only one punishment."[37] We hold that the evidence adduced at trial shows that the two burglaries alleged in the indictment were committed at the same time and place and were parts of a single continuous criminal act. Although this issue was not raised in the trial court, the judgment of conviction and the sentence imposed for Count 2 are vacated by operation of law.[38]

8. Enumeration no. 21 asserts that the trial court erred by failing to merge Count 9 of the indictment, which charged McConnell

---

[34] (Punctuation and footnote omitted.) *Green v. State*, 240 Ga. App. 377, 381 (9) (523 SE2d 581) (1999).

[35] "A person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within . . . any building . . . or any room or any part thereof."

[36] See *Maynard v. State*, 170 Ga. App. 683, 684 (1) (317 SE2d 666) (1984).

[37] (Punctuation omitted.) *Hubbard v. State*, 168 Ga. App. 778, 779 (2) (310 SE2d 556) (1983).

[38] *Curtis v. State*, 275 Ga. 576, 577 (1) (571 SE2d 376) (2002).

with financial transaction card theft for taking Cook's Discover card from her office, with the burglary. We disagree.

> Under Georgia's statutory double jeopardy provisions (OCGA §§ 16-1-6; 16-1-7), there is no prohibition against a defendant's being convicted of both burglary and a completed criminal offense, in this case [financial transaction card theft], after gaining entry into the dwelling, as each offense has distinct elements.[39]

*Judgment affirmed in part and reversed in part. Johnson, P. J., and Eldridge, J., concur.*

DECIDED OCTOBER 21, 2003.

*Franklin & Hubbard, Brooks S. Franklin,* for appellant.
*David McDade, District Attorney, William H. McClain, Christopher R. Johnson, Assistant District Attorneys,* for appellee.

