## A06A1592. MOORE v. THE STATE.
(635 SE2d 253)

PHIPPS, Judge.

Following the denial of his motion for new trial on grounds of ineffective assistance of counsel, Derrick Moore appeals his convictions on one count of burglary, three counts of aggravated assault upon on-duty police officers, and one count of possession of a firearm during the commission of the crime of burglary. Finding no merit in any of Moore's claims of error, we affirm.

Evidence presented by the state in its case-in-chief showed that at approximately 3:30 a.m. on July 17, 2003, Robert Carroll went to his place of employment on Roswell Road in Marietta. A bookstore known as the Book Nook was located next door. Carroll saw a Ford Taurus with only one headlight being driven onto the premises. According to Carroll, the driver got out of the car with a satchel, went to a side door toward the rear of the Book Nook, took a crow bar from the satchel, pried the door open, and walked inside the store. Carroll then called 911 to report the break-in.

A crime dispatch was then broadcast over police radio, to which various officers responded. The first to arrive on the scene were Cobb County Police Officers Larry Wilson and Christopher Olivero, who had been doing undercover work nearby. Therefore, they were not in uniform. Uniformed Cobb County Patrol Officer Bill MacAuley arrived next.

Upon exiting their car, Wilson and Olivero put on vests clearly identifying themselves as police officers. They encountered Carroll, who directed them to the door through which the subject had entered. They saw signs of forced entry and tried to open the door, but it had locked automatically after it closed. Olivero secured the area surrounding the door, while Wilson went to the front of the store. MacAuley arrived on the scene at about that time and proceeded toward the front of the store with Wilson.

MacAuley observed a man wearing a black knit cap and other dark clothing inside the store. He saw the man dart out from behind a counter and run toward the rear of the store. MacAuley and Wilson then began to run in the same direction. As they approached the side door, the man (later identified as Moore) burst out of the door from inside the building. He began firing shots at the officers and attempted to flee the scene. The officers returned fire and gave him verbal commands to stop. After losing sight of him when he went behind a storage container, the officers began moving in his direction. When they regained sight of him, he was lying on the ground. They converged on him, kicked his gun away, and arrested him. Two other guns were found in his possession, along with an assortment of

burglary tools. Because Moore had been shot in the leg, the officers summoned an ambulance to take him to the hospital.

·After the state had rested its case, Moore testified that he worked across the street from the Book Nook; that, on the evening in question, he had crossed the street to investigate cries for help he had heard coming from the area of the bookstore; that he had noticed that employees of the store had negligently left the door propped open with a wooden block; and that he had gone inside the store to see if everything was all right. He claimed that upon exiting the store, his gun discharged accidentally because one of the officers bumped the door. He testified that he was in possession of numerous weapons because he needed them for his job and did not want to keep them around the children at his house. He denied firing his weapon more than once, and he insisted that none of the three police officers involved in the shooting was recognizable as such.

In rebuttal, the state sought to admit statements which Moore had given to police officers in the hospital after the shooting. At a *Jackson v. Denno* hearing, the court found the statements admissible. Testimony by the officers showed that Moore had made statements to them admitting that he had gone into the Book Nook to find something of value because he was hungry and homeless. Other evidence will be reviewed as necessary to resolve the claims of error raised.

1. Moore first contends that the superior court violated his rights under the state and federal constitutions by failing to grant his request to discharge his court-appointed attorney and represent himself.

> Both the federal and state constitutions guarantee a criminal defendant the right to self-representation. An unequivocal assertion of the right to represent oneself, made prior to trial, should be followed by a hearing to ensure that the defendant knowingly and intelligently waives the right to counsel and understands the disadvantages of self-representation.[1]

Prior to trial, Moore wrote a letter to the clerk of the superior court announcing that he was "going pro se" because of his dissatisfaction with his attorney's services and asking the clerk for the name of the presiding judge and the date of his arraignment. The clerk responded with the requested information. After filing several pro se motions, Moore wrote a letter to the superior court judge complaining

---

[1] *Thaxton v. State,* 260 Ga. 141, 142 (2) (390 SE2d 841) (1990) (citations omitted).

that his attorney was providing him with ineffective assistance and requesting that his attorney "stop all legal work" and that he, Moore, be advised of any trial matters. In this letter, Moore indicated that he was requesting a new attorney. And at the first calendar call of the case, Moore's court-appointed attorney informed the court that Moore had also told him that he wanted another attorney. At the next calendar call, the court listened to Moore's complaints about his attorney and offered him an opportunity to hire his own lawyer but refused to appoint another attorney to represent him. At the beginning of the trial, defense counsel represented to the court that Moore was no longer dissatisfied with his services. When the court informed Moore that counsel's associate would also be assisting with his defense, Moore raised no objection. Under these circumstances, no unequivocal assertion of Moore's right to represent himself was made. For this reason, we find no merit in this claim of error.[2]

2. Moore next contends that the superior court erred by allowing MacAuley and Wilson to introduce themselves to the jury by testifying that they had children and by allowing Olivero to testify as to how discharge of Moore's weapon in such close proximity to him impaired his hearing.

Evidence concerning the effect of the discharge of Moore's weapon on Olivero's hearing was not objectionable, as it was a contextual detail that allowed the jury to understand the circumstances of the crime.[3] Although we agree that evidence about the officers' families had little, if any, relevance in the guilt-innocence phase of Moore's trial,[4] Moore did not object to this evidence at trial. Therefore, the trial court was not asked to determine its relevance, and the issue was waived.

3. Moore next contends that the court erred by allowing the prosecutor to make an improper "golden rule" argument before the jury.

"A 'golden rule' argument is one that, regardless of the nomenclature used, asks the jurors to place themselves in a victim's position."[5] "Such an argument is impermissible because it encourages the jurors to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence."[6]

Here, the prosecuting attorney asked the jurors to place themselves in the position of "these police officers with children" and

---

[2] *Lynott v. State*, 198 Ga. App. 688, 689 (2) (402 SE2d 747) (1991).

[3] See *Butts v. State*, 273 Ga. 760, 767 (15) (546 SE2d 472) (2001).

[4] See *Lucas v. State*, 274 Ga. 640, 643 (2) (b) (555 SE2d 440) (2001).

[5] *Braithwaite v. State*, 275 Ga. 884, 885 (2) (b) (572 SE2d 612) (2002) (footnote omitted).

[6] Id. at 894 (citation and punctuation omitted) (Hunstein, J., dissenting).

imagine what they experienced at the loud sound of the gun discharging. The prosecutor thereupon demonstrated the sound by clapping his hands. The court found that the prosecutor's demonstration of the loud noise did not offend the golden rule. We, however, find that his words did. But in view of the overwhelming evidence against Moore, it is highly probable that the comments of the prosecutor to which Moore objected did not, in context, contribute to the verdict.[7]

4. Moore charges the trial court with error in allowing investigators from the Cobb County and Marietta Police Departments to testify to the content of out-of-court statements given to them by Carroll and certain of the officers involved in the shooting.

At trial, Moore raised a hearsay objection to this evidence. The superior court overruled the hearsay objection, because the persons who had made the out-of-court statements were witnesses in the case who remained available for cross-examination. On appeal, Moore argues that the investigators' testimony improperly bolstered the credibility of the witnesses who made the out-of-court statements.[8] We have held, however, that where a party objects to evidence only on grounds of hearsay, an objection on the ground of improper bolstering has been waived.[9]

5. Moore contends that the superior court erred in admitting the statements he made in the hospital because his testimony showed that he was coerced into making them.

In his trial testimony, Moore claimed that police officers refused to allow him to be given medical treatment at the hospital until he made incriminating statements to them. In their testimony, however, the officers denied Moore's claim. Construed in a light most favorable to the lower court's ruling,[10] the evidence thus authorized the trial court to find that Moore was not coerced into making the statements. We, therefore, uphold its admission of Moore's statements.

6. Moore contends that the superior court erred in instructing the jury on the offenses of burglary and aggravated assault and in not instructing the jury on the lesser included offense of criminal trespass.

(a) The indictment charged Moore with burglary by entering the Book Nook without authority and with intent to commit a theft therein. The court instructed the jury that a person commits burglary when, without authority, that person enters "or remains" in any

[7] Burgess v. State, 264 Ga. 777, 785 (20) (450 SE2d 680) (1994).
[8] See Baugh v. State, 276 Ga. 736, 738 (2) (585 SE2d 616) (2003).
[9] Talley v. State, 269 Ga. App. 712, 714 (4) (605 SE2d 108) (2004).
[10] Blackford v. State, 251 Ga. App. 324, 327 (3) (554 SE2d 290) (2001).

building with the intent to commit a theft.[11] On appeal, Moore argues that this disjunctive jury charge authorized his conviction of the crime in a manner not set forth in the indictment. At trial, however, Moore not only failed to raise this objection; he affirmatively stated to the court that the jury charge was adjusted to the facts. This objection was thus waived.[12]

(b) The indictment charged Moore with aggravated assault on the officers by firing a pistol in their direction. "An assault is an attempt to commit a violent injury to the person of another or an act which places another in reasonable apprehension of immediately receiving a violent injury. Aggravated assault is an assault conducted with an object which, when used offensively against a person, is likely to result in serious bodily injury."[13] The trial court properly charged the jury on these elements of the offense. The court did not err in additionally charging the jury that actual injury to the victim need not be shown, because the indictment contained no allegation requiring such proof.[14]

(c) Moore requested a jury instruction on criminal trespass as a lesser included offense of burglary. Under OCGA § 16-7-21, however, criminal trespass may be committed by several different methods; and Moore did not specify in his request to charge the particular method on which he wanted the jury instructed. On appeal, Moore argues that he was entitled to a jury instruction on the lesser included offense of criminal trespass under OCGA § 16-7-21 (b) (1), which provides that "[a] person commits the offense of criminal trespass when he or she knowingly and without authority . . . [e]nters upon the land or premises of another person . . . for an unlawful purpose." But Moore testified that he entered the business for a lawful purpose.[15] The state's evidence showed that he entered the building with the intent to commit theft. There was no evidence that he entered for any other unlawful purpose. He was therefore not entitled to a jury instruction under OCGA § 16-7-21 (b) (1).[16]

7. Moore complains that his rights under the Confrontation Clause of the Sixth Amendment were violated by the admission of testimony by one of the investigators that he had run a computer

---

[11] OCGA § 16-7-1 (a).

[12] See *Hill v. State*, 269 Ga. App. 459 (1) (604 SE2d 300) (2004).

[13] *Merneigh v. State*, 242 Ga. App. 735, 736 (1) (531 SE2d 152) (2000) (citing OCGA §§ 16-5-20 and 16-5-21).

[14] Compare *Talton v. State*, 254 Ga. App. 111 (1) (561 SE2d 139) (2002).

[15] Compare *Hiley v. State*, 245 Ga. App. 900 (539 SE2d 530) (2000).

[16] See *Walker v. State*, 251 Ga. App. 217, 219 (2) (a) (553 SE2d 319) (2001) (defendant not entitled to jury charge on lesser included evidence where evidence showed commission of greater offense or no offense at all).

check on the license plate of the Ford Taurus that Moore had driven onto the premises and determined that the car had been reported stolen.

Introduction of evidence of the stolen-car report did not implicate the concerns of the Confrontation Clause, because it would appear that the primary purpose of the report was to advise law enforcement authorities of a crime in progress rather than to initiate a prosecution; therefore, the report was not testimonial in nature.[17] And even though evidence such as this is hearsay, it has been found to be admissible.[18]

8. Finally, Moore claims that he was deprived of his Sixth Amendment right to effective assistance of counsel because his attorney failed to raise an "improper bolstering" objection to the investigators' testimony concerning the prior consistent statements of the other state's witnesses and failed to present certain evidence.

In view of the strength of the evidence against Moore, it does not appear that the investigators' testimony as to the statements given to them by the other witnesses added such weight to the state's case as to have created a reasonable probability that the result of the proceeding would have been different without that testimony.[19] As to Moore's complaint about his attorney's failure to present evidence, counsel's testimony at the hearing on Moore's motion for new trial authorized the superior court to find that there was no tactical or strategic reason to present some of the evidence and that there were compelling strategic reasons for not presenting the other evidence. Consequently, Moore has not carried his two-part burden of establishing ineffective assistance of counsel.[20]

*Judgment affirmed. Ruffin, C. J., and Smith, P. J., concur.*

DECIDED AUGUST 2, 2006 

*Lynn G. Fant*, for appellant.
*Patrick H. Head, District Attorney, Reuben M. Green, Amy H. McChesney, Assistant District Attorneys*, for appellee.

---

[17] See generally *Pitts v. State*, 280 Ga. 288 (627 SE2d 17) (2006).

[18] See *Russell v. State*, 236 Ga. App. 645, 650 (4) (512 SE2d 913) (1999).

[19] See generally *Terry v. Jenkins*, 280 Ga. 341, 342 (2) (627 SE2d 7) (2006); *Baugh v. State*, supra, 276 Ga. at 739-740, and cits.

[20] See generally *Terry v. Jenkins*, supra.