## A95A1789. TINKER v. THE STATE.
(463 SE2d 368)

ANDREWS, Judge.

Tinker, convicted of two counts of violating the RICO Act, OCGA § 16-14-1 et seq.,[1] appeals, alleging that he was improperly forced to proceed to trial without counsel of his own choosing and that the court's assigning him a "procedural adviser" caused errors. We affirm.

Tinker was indicted on January 27, 1994. Attorney Jones was appointed to represent Tinker, and he filed numerous motions on Tinker's behalf on May 4, 1994. On June 24, 1994, although Jones was still his counsel of record, Tinker filed motions on his own behalf. Tinker was arraigned on this indictment on November 23, 1994, with Jones as his counsel. This case was placed on the trial calendar for December 5, 1994, but was not reached.

Tinker, who was incarcerated, filed pro se motions on December 27, 1994, and January 20, 1995. On February 10, 1995, Jones filed his motion to withdraw as counsel, accompanied by Tinker's consent and request to withdraw. The Consent requested Jones' removal because Tinker was "not pleased with his representation and will either represent myself or hire counsel to represent me in [this] case. I further understand that I will not be allowed to have counsel appointed for me of my own choosing. I understand and agree that this case is on the February Trial Calendar beginning Monday, February 13, 1995 and that I will be responsible for preparing and being ready for trial."

On February 13, 1995, the State called Tinker's case and Tinker was sworn and asked about his efforts to employ counsel. The State also informed the court and Tinker that the State would specially set the case for trial during the week of March 20. Tinker informed the court that he had not yet employed counsel. Asked if he intended to employ counsel or represent himself, Tinker stated "I'm looking in to something right now. Court: What are you looking in to, . . . . Tinker: Hiring a lawyer. Court: Who? Tinker: I'm not sure of the name right now. He's from Atlanta, I'm not sure. . . . . I'm just, you

---

[1] The two RICO counts were merged for purposes of sentencing.

know, trying to interview a couple of people to see who I want to represent me. Court: Well, you be aware of this now. When the day comes for it to go to trial if you don't have a lawyer you're going to represent yourself. The rule is, the Court appointed you a lawyer and the Court appointed you . . . you had one of the most experienced lawyers, . . . , and you chose to discharge him. The Court is not inclined to appoint you another lawyer, so hire yourself one or be prepared to represent yourself at trial. We're going to go on with it at all deliberate speed."

On March 20, 1995, Tinker's case was called for trial, and the State announced ready. The court had directed attorney Willis to sit with Tinker during the trial as a "procedural adviser." The court inquired as to Tinker's readiness for trial, and Tinker asked for a continuance, stating that "[m]y family and friends here in Atlanta have found me a lawyer that's wanting to take this case, and as far as I remember you said that if I found a lawyer or if I didn't by today that, you know, I'd have to represent myself, but I found a lawyer and now I'd like for him to have enough time to represent me in the case, but he'll need time to do his work. Court: Show me a receipt where you've paid him. Tinker: Well, see, I don't have any of that. I can't prove that I have because I have somebody else on the outside doing this stuff for me, you know, I'm in the jail here."

The State informed the court that Harvey, the lawyer in question, now appellate counsel, had informed the State two weeks previously that he had not been retained, and the record here reflects that Harvey had made no entry of appearance on Tinker's behalf.

The court reminded Tinker that, when Tinker had asked for Jones' withdrawal, "I informed you at the time that you needed to give very serious consideration before you asked me to dismiss your lawyer because I would do so, but that if I did so I wouldn't give you another free lawyer, you'd have to represent yourself or hire one, and . . . you told the Court, . . . back in February, that you had a lawyer ready to be hired. Now, we're talking about March the 20th."

Tinker then advised the court that he had spoken to Harvey by phone on Friday and "I have counseled with him, but I'm not sure of a retainment plan, what they have worked out. . . ."

The court then denied Tinker's motion for continuance. The record reflects that Harvey was retained by Tinker on April 18, 1995, nearly a month after the trial was over.

1. Tinker's first enumeration is that the court erred in "refusing to grant a continuance where the defendant, who has been deemed indigent, but desires to hire counsel, is allowed to dismiss his court appointed counsel without a hearing to determine his ability to retain private counsel, denies any desire to represent himself and diligently pursues representation from the point his court appointed counsel is

dismissed until trial the following month, but is unable to retain counsel."

(a) "When, as here, (an) appellant asserts more than one error within a single enumeration, this court in its discretion may elect to review none, or one or more, of the errors asserted within the single enumeration. [Cits.]" *Toledo v. State*, 216 Ga. App. 480, 482 (4) (455 SE2d 595) (1995).

We will address only the issue of the denial of a continuance. Even if properly enumerated, we need not address the contentions concerning the lack of a hearing on Tinker's ability to retain private counsel, since that issue has been mooted by his having done so for this appeal.

(b) "The grant or denial of a continuance, including on grounds of absence of counsel, is within the discretion of the trial court and will not be disturbed unless it clearly appears the trial court abused that discretion. *Pope v. State*, 256 Ga. 195, [205-]207 [(12)] (345 SE2d 831) [1986]; [cits.]. . . . Denial of continuance may be proper where defendant negligently failed to employ counsel promptly or where it appears he is using the tactic for delay. [Cit.]" *Stephens v. State*, 208 Ga. App. 620 (1) (431 SE2d 422) (1993).

In such a situation, the burden of convincing the court that due diligence has been exercised is that of the movant, Tinker. OCGA § 17-8-20; *Patterson v. State*, 202 Ga. App. 440 (1) (414 SE2d 895) (1992). Here, the only showing made was Tinker's statement that he had spoken to the attorney, apparently on the Friday before trial was to begin on Monday, but had not yet retained him.

Whether a defendant has exercised due diligence in hiring counsel is a factual question, and the trial court's grant or denial of a continuance on this basis will not be disturbed absent an abuse of discretion, which has not been shown here. *Wood v. State*, 199 Ga. App. 252, 253 (1) (404 SE2d 589) (1991); see *Chambers v. State*, 213 Ga. App. 414, 417 (4) (444 SE2d 820) (1994); *Vincent v. State*, 210 Ga. App. 6, 8 (3) (435 SE2d 222) (1993).

This case is similar to *Adams v. State*, 210 Ga. App. 151 (435 SE2d 514) (1993). There, the court appointed counsel for Adams, based on his indigence. After a jury was selected, Adams decided he no longer wanted appointed counsel but wanted to retain counsel, contending that his father could hire one for him. There was, however, no showing made that his father would or could in fact hire an attorney. This Court found no abuse of discretion in the trial court's refusal to allow Adams to delay the trial in order to seek counsel of his own choosing. See *Vincent*, supra; compare *Hasty v. State*, 215 Ga. App. 155 (450 SE2d 278) (1994).

Here, Tinker was allowed to discharge his appointed counsel, with full knowledge that he would be responsible for obtaining coun-

sel or representing himself. There is no indication in the record or transcript that Tinker did not understand his options, only that he failed to timely exercise the option of retaining counsel.

(c) The argument that there was an inadequate showing of Tinker's knowing and intelligent waiver of his right to counsel is also meritless.

"A defendant's voluntary election of the alternative right of self-representation is not, however, the only circumstances in which the waiver of the right to counsel may arise. Notwithstanding a defendant's present verbal insistence upon his right not to be tried without counsel, his own past actions may nevertheless demonstrate that the right has been waived. Since a non-indigent defendant's right to counsel is predicated upon his own diligence, a failure on his part to retain counsel may constitute a waiver of the right to counsel. [Cits.]" *Smith v. State,* 194 Ga. App. 810 (392 SE2d 288) (1990); *Williams v. State,* 169 Ga. App. 812, 815 (315 SE2d 42) (1984).

Here, the record reflects that the court repeatedly advised Tinker of the need to have his attorney of choice retained and ready to proceed on March 20. We find no abuse of discretion in the court's denial of the motion for continuance.

2. Tinker's second and third enumerations are subject to the same duplicity as the first. Division 1 (a), supra. Nonetheless, we will address what we deduce to be the contention in the second enumeration that Tinker suffered reversible harm because of the services rendered by the procedural adviser.

As acknowledged by appellate counsel, after Tinker had made his opening argument and cross-examined two witnesses, he voluntarily chose to remove himself from the courtroom and refused to further participate in his trial. As Tinker stated "I basically can't go through with it, you know, watching, or emotionally handling this, you know, what I'm doing to myself."

Out of an abundance of caution, after Tinker removed himself from the trial, the trial judge directed the procedural adviser to participate by cross-examining the next two witnesses. The adviser, however, was never appointed to represent Tinker. After the adviser expressed his discomfort with this direction, the court stated that this had "put [the adviser] in a position that he should not be in. It is not his duty to act as counsel for this defendant, . . . so I am going to instruct the jury that from here on out [he] will be an observer." The use of such a procedural adviser/observer is not error. *Hose v. State,* 161 Ga. App. 401 (288 SE2d 675) (1982); see *McCook v. State,* 178 Ga. App. 276, 277 (342 SE2d 757) (1986); *Williams,* supra at 815.

Having waived his right to be present for the remainder of his trial, *Stell v. State,* 210 Ga. App. 662, 663 (4) (436 SE2d 806) (1993); *Miller v. State,* 122 Ga. App. 869 (1) (179 SE2d 265) (1970), it is not

apparent what harm could have been suffered by Tinker's receiving the advantage of a procedural adviser's participation in some cross-examination and, thereafter, observing the trial and telling Tinker what was occurring.

The third enumeration is, in essence, that such a procedural adviser who does not vigorously represent his non-client is ineffective as a matter of law. Again, we note that it was Tinker who, by his actions, chose to represent himself and then chose to remove that representation from the trial. Any ineffectiveness in so doing was his own. There has been no showing of any harm to Tinker from the availability of the adviser, and these enumerations are without merit.

3. Finally, it is argued that reversible error was committed by the trial judge when he conducted the hearing on Tinker's motion to suppress and *Franks* motion.[2]

Although a warrant, signed by the trial judge, was issued for the search of the home occupied by Tinker and Marr,[3] this was done only after the search had been conducted pursuant to the consent of Marr, who signed a consent form and did not attack the voluntariness of it in pretrial proceedings. Therefore, even if an appropriate objection had been made by Tinker to the trial judge's ruling on the *Franks* motion and the motion to suppress, which was not done, there has been no harm demonstrated by Tinker by any such error. Additionally, Tinker made no showing of any falsity in the affidavit, much less evidence of that deliberate falsity or reckless disregard for the truth which is a prerequisite to the need for a *Franks* hearing. *Williams v. State*, 251 Ga. 749, 796 (312 SE2d 40) (1983).

*Judgment affirmed. McMurray, P. J., and Blackburn, J., concur.*

DECIDED OCTOBER 23, 1995.

*Bruce S. Harvey, Pete C. Whitlock, Jr.*, for appellant.
*Alan A. Cook, District Attorney*, for appellee.

---

[2] Based on *Franks v. Delaware*, 438 U. S. 154 (98 SC 2674, 57 LE2d 667) (1978), and alleging falsity in the affidavit supporting the application for the search warrant.

[3] Marr was indicted with Tinker and pled guilty. She testified against Tinker at his trial.