A06A0452. BAKYAYITA v. THE STATE.
(629 SE2d 539)

MIKELL, Judge.

A Fulton County grand jury returned an indictment charging Jasper Bakyayita with armed robbery (Count 1), aggravated assault (Count 2), and possession of a firearm during the commission of a felony (Count 3).[1] After a jury trial, Bakyayita was convicted on Counts 1 and 3 and of the lesser included offense of theft by taking of property of equal or lesser value than $500. On appeal, Bakyayita contends that the trial court erred when it denied his motion for continuance and refused to strike a juror for cause. Bakyayita also challenges the sufficiency of the evidence. We affirm.

"On appeal from a criminal conviction, the evidence must be construed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence."[2] So viewed, the evidence shows that at approximately 4:00 a.m. on May 3, 2001, Herminder Singh and Harold Russell were working at a BP gas station, when Singh, the store clerk, noticed that a young man was shoplifting. Singh activated the magnetic lock on the door and asked Russell to manually lock the door. Singh exited the locked cabin where the cash drawer is located and asked the young man, who was a regular

---

[1] Masaka O'Neal was jointly indicted with Bakyayita on the charge of armed robbery.

[2] (Citations and punctuation omitted.) *Hutchinson v. State*, 232 Ga. App. 368, 369 (501 SE2d 873) (1998).

customer and whom he identified as O'Neal, to empty his pockets. At that moment, another man, who Singh identified as the appellant herein, put a gun to Singh's head and pushed him back into the cabin.

Singh testified that Bakyayita struck him with the butt of the gun on his head and forced him to the floor; that Bakyayita, O'Neal, and another man stole more than $2,000 and other items from the store; and that O'Neal took the cassette tape from the store's video cameras as the men exited the store but left it once they saw a police officer outside of the store. Approximately thirty minutes later, the police returned to the store with two suspects, who Singh identified as the gunman, Bakyayita, and the shoplifter, O'Neal.

Russell testified that the robbery occurred as he walked into the store from outside. Russell recalled that Singh told him to lock the door because someone was shoplifting; that he recognized the shoplifter as a repeat customer; that he saw the gunman hit Singh in the head with a gun; that the third man punched Russell in his side with what he thought was a gun; that the perpetrators took all of the money from the cash drawer; that he unlocked the door for the three men to leave when he noticed a police officer outside; and that the police officer returned to the store with two of the men who were involved in the robbery.

Officer Amy Soeldner testified that at the time of the incident, she was a patrol officer with the Atlanta Police Department and that she routinely stopped by the BP station to check on Singh. On the evening in question, she noticed two unusual things as she approached the store: the door that leads to the clerk's cabin was open, and an individual in a red and black sports jacket, who was walking across the parking lot, suddenly ran across the street once he saw her. Soeldner suspected that the store was being robbed and chased the individual, but he disappeared by the time she reached her vehicle and radioed information about the incident.

Officer Raymond Layton testified that he arrived at the scene within 30 seconds of Officer Soeldner's broadcast; that Soeldner directed him to the area where she had last seen the suspects; that he ran approximately 75 yards into the woods and located two men crouching beside an abandoned tire; that he ordered the men not to move and handcuffed them together; and that he noticed a handgun laying inside the tire that the men had been crouched beside. Layton recalled that one of the men was wearing a red and black jacket and identified that man as Bakyayita.

Soeldner approached the area as Layton handcuffed the men and secured the weapon. Soeldner also escorted Bakyayita and O'Neal to the store where they were identified by Singh and Russell.

1. In his first enumerated error, Bakyayita challenges the trial court's denial of his request for a continuance to afford his family time

to hire a private attorney to represent him. "The grant or denial of a continuance, including on grounds of absence of counsel, is within the discretion of the trial court and will not be disturbed unless it clearly appears the trial court abused that discretion."[3] We find no such abuse.

Bakyayita was arrested on May 3, 2001. On July 16, 2001, an attorney filed a leave of absence, claiming to be Bakyayita's lead attorney. On October 8, 2001, Bakyayita requested a court-appointed attorney, and on January 19, 2002, a court-appointed attorney filed an entry of appearance on Bakyayita's behalf. On October 8, 2002, the first day of trial, Bakyayita moved for a continuance, arguing that his family needed additional time to retain a private attorney. The trial judge informed Bakyayita that he had never notified the court of any problems with his trial counsel and that he and his family could retain additional counsel, but the case would proceed. Bakyayita informed the court that he had previously sent a letter expressing his dissatisfaction with his attorney, but the only letter in the record, although dated September 18, 2002, was notarized on June 19, 2003, and filed on June 23, 2003, several months after the trial concluded.

"[I]n all cases, the party making an application for a continuance must show that he has used due diligence,"[4] and the question of whether a defendant has exercised due diligence in hiring counsel is a factual one that is determined by the trial judge.[5] The record here shows that Bakyayita's family was aware that he desired a private attorney at the outset as evidenced by the fact that his first attorney was privately retained. Once Bakyayita requested and was appointed an attorney by the court, several months passed, during which it appears that Bakyayita did nothing to inform the court of his desire to retain an attorney. Bakyayita also made no showing that his father would or could hire an attorney.[6] Bakyayita has not shown that he exercised due diligence in his quest to hire a private attorney. Accordingly, the trial court's refusal to grant a continuance on this ground was not an abuse of discretion.[7]

2. Next, Bakyayita contends that the trial court should have dismissed juror number 27 for cause. "Whether to strike a juror for

---

[3] (Citation omitted.) *Collins v. State*, 269 Ga. App. 164, 165 (603 SE2d 523) (2004).

[4] (Citations, punctuation and footnotes omitted.) *Lee v. State*, 254 Ga. App. 417, 419 (2) (562 SE2d 800) (2002), citing OCGA § 17-8-20.

[5] Id. at 420 (2).

[6] See *Adams v. State*, 210 Ga. App. 151, 152-153 (1) (435 SE2d 514) (1993) (trial court properly denied continuance where after a jury was selected, the defendant informed the court that he no longer wished to be represented by his court appointed counsel, contending that his father could hire one for him but made no showing that his father would or could do so).

[7] See *Tinker v. State*, 218 Ga. App. 792, 794 (1) (b) (463 SE2d 368) (1995) (court may properly deny a continuance where defendant negligently failed to employ counsel promptly).

cause is within the discretion of the trial court and the trial court's rulings are proper absent some manifest abuse of discretion."[8] Based on the circumstances herein, we find no error.

During voir dire, juror number 27 indicated that she had been a victim of a violent crime but thought that she could be a fair and impartial juror. Out of the presence of the remaining jurors, the juror indicated that her ex-husband had abused her and that she had been a witness in his case. Defense counsel moved the court to strike the juror for cause because of her experience with domestic violence. The trial court denied the motion, stating:

> If her prior experience with a criminal attack that in any way resembled this either by gender, semblance or by the nature of the act, in an exercise of caution, in the best interest of the defendant, I would have stricken her for cause as I did with another juror that actually assured us that he could be fair having been robbed six months ago.

We cannot conclude that the court abused its discretion in refusing to strike for cause the juror at issue. Our Supreme Court has held that

> before a juror can be disqualified for cause, it must be shown that an opinion held by the potential juror is so fixed and definite that the juror will be unable to set the opinion aside and decide the case based upon the evidence or the court's charge upon the evidence.[9]

Based on the record herein, there was no showing that the juror expressed an opinion that precluded her from deciding the case based on the evidence. Instead, she indicated that despite her experience as a victim of a crime, she could be a fair and impartial juror. Accordingly, the trial court's refusal to remove the juror for cause was not an abuse of discretion.[10]

3. Finally, Bakyayita challenges the sufficiency of the evidence, arguing that the evidence of his involvement was circumstantial

---

[8] (Punctuation and footnote omitted.) *Lewis v. State*, 279 Ga. 756, 760 (3) (a) (620 SE2d 778) (2005). See also *Wellons v. State*, 266 Ga. 77, 84 (6) (a) (463 SE2d 868) (1995); *Montijo v. State*, 238 Ga. App. 696, 704 (6) (520 SE2d 24) (1999), citing *Brown v. State*, 268 Ga. 354, 356 (3) (490 SE2d 75) (1997).

[9] (Citations and punctuation omitted.) *Garland v. State*, 263 Ga. 495, 496 (1) (435 SE2d 431) (1993).

[10] See *Garrett v. State*, 280 Ga. 30, 31 (2) (622 SE2d 323) (2005) (no abuse of discretion to refuse to disqualify a juror who had been a victim of a crime but indicated that she could be fair and impartial); *Green v. State*, 249 Ga. App. 546, 552 (3) (547 SE2d 569) (2001) (same).

since he explained his presence at the scene. Bakyayita testified that he was patronizing the store when the robbery occurred; that he stole some items from the store but placed them back on the shelves because of the robbery; that after the perpetrators left the building, he approached Singh to purchase cigarettes and a cigar, but Singh refused to accept his money and threatened to call the police; that he left the store in a hurried manner and walked toward the woods where he saw Officer Layton and O'Neal, who was handcuffed; and that Layton then arrested him and he and O'Neal were escorted to the store.

Bakyayita's argument that the evidence against him was wholly circumstantial and, therefore that the state was required to exclude every other reasonable hypothesis save that of his guilt, misses the mark. There was direct testimony from Singh that Bakyayita was the gunman during the robbery. Pursuant to OCGA § 24-4-8, the testimony of a single witness is sufficient to establish a fact. The fact that Bakyayita offered another explanation for his presence at the store does not render the other evidence against him insufficient or circumstantial. "A jury is authorized to believe or disbelieve all or any part of the testimony of witnesses[,] and it serves as the arbiter of conflicts in the evidence before it."[11] In this case, it obviously chose to disbelieve Bakyayita's version of the events, and the remaining evidence was sufficient to convince a rational trier of fact of Bakyayita's guilt beyond a reasonable doubt.

*Judgment affirmed. Blackburn, P. J., and Adams, J., concur.*

DECIDED MARCH 31, 2006.

*Thomas S. Robinson III*, for appellant.
*Paul L. Howard, Jr.*, District Attorney, *Alvera A. Wheeler, Ayana C. Curry*, Assistant District Attorneys, for appellee.

---

[11] (Citation and punctuation omitted.) *Campbell v. State*, 258 Ga. App. 863, 866 (575 SE2d 748) (2002). See also *Roberts v. State*, 242 Ga. App. 621 (530 SE2d 535) (2000); *McLeod v. State*, 245 Ga. App. 668-669 (1) (538 SE2d 759) (2000).