## A07A1314. LEWIS v. THE STATE.
### (651 SE2d 494)

BERNES, Judge.

Following a jury trial, Johnny Mack Lewis was convicted of four counts of theft by taking. On appeal, Lewis challenges the sufficiency of the evidence supporting his convictions. For the reasons that follow, we affirm.

"When reviewing for sufficiency of the evidence, we view the evidence in the light most favorable to the verdict. As long as some competent evidence exists, even though contradicted, to support each fact necessary to make out the [s]tate's case, we will uphold the factfinder's verdict." (Citations and punctuation omitted.) *Johnson v. State*, 275 Ga. App. 161 (620 SE2d 433) (2005).

Viewed in this light, the evidence shows that during the relevant time period, the victim, Bob Shipley, owned Marietta Finance, a company that specialized in providing small loans to clients who did not have credit or did not otherwise qualify for traditional loans. Marietta Finance received a great deal of technical and administrative support, including oversight and review of daily office transactions and financial records, from Walters Management, a company owned by Shipley's father-in-law.

Shipley hired Lewis as an assistant manager of Marietta Finance in June 2001. In August 2002, Shipley promoted Lewis to the position of manager and gave him the authority to write and sign company checks for loans and payroll. Lewis was also charged with ensuring employee compliance with office rules and guidelines. Company policy forbade employees from using company checks or funds for personal use.

Beginning in September 2002, Shipley's attention to the daily aspects of his business began to lapse as he underwent a divorce. At about the same time, Walters Management terminated its relationship with Marietta Finance, effectually leaving the running of the business to Lewis without significant oversight.

In October 2002, Shipley began noticing sharp increases in the company's expenses. While monthly expenses for the office normally ran around $10,000-$15,000, the month-end expenses for October

2002 totaled over $20,000. In November 2002, the office expenses rose to $38,000-$40,000, and by December 2002, they totaled $44,000.

During this time period, Shipley observed that Lewis's lifestyle was becoming increasingly extravagant. Lewis was buying and repairing cars and spending "a fortune" on clothes. He even had a "clothes man" that came to the office every Saturday with a car full of merchandise.

Shipley eventually hired Melanie Winkles, a former employee with Walters Management, to investigate the sharp spike in operating expenses. In June 2003, after learning that Lewis had failed to make daily bank deposits and allowed the office's loan insurance to go unpaid, Shipley terminated Lewis's employment. After Lewis's termination, the operating expenses of Marietta Finance quickly decreased to $13,000-$15,000 per month.

During Winkles's six-month investigation into the financial records of Marietta Finance, she discovered that Lewis had made numerous unauthorized expenditures and at least one fraudulent loan, totaling in excess of $20,000. She compiled business records documenting Lewis's theft, which the state presented at trial. That evidence showed that during the time spanning from February 1, 2002 to May 31, 2003, Lewis wrote numerous company checks for personal use, diverted unauthorized funds to his family, and falsified at least one loan. Specifically, the state tendered cancelled checks and presented testimony to establish that Lewis had used company funds to pay for the following: repair and towing of at least three of his personal vehicles in an amount totaling nearly $4,880; repairs to his mother's house totaling $1,760; the purchase of home furnishings totaling over $4,200; his personal rent in an amount exceeding $2,300; his stepson's tuition in the amount of $300; and the application and program fees for an association of which he was a member in the amount of $1,200.

The state also presented evidence that Lewis misappropriated Marietta Finance funds when he wrote four company checks totaling $4,050 to himself and cashed them in the cash drawer; gave his wife over $1,760; and paid his mother $600 of Marietta Finance's money.

Finally, the state presented evidence that at least one Marietta Finance customer had applied for a loan and had her application denied by Lewis. Nevertheless, a check was written in the amount of $441.95, made payable to the customer and recorded in Marietta Finance's books as a loan. The customer testified that she had never received a check from Marietta Finance. When she later received a letter stating that she was behind payment on the loan, she called Marietta Finance and was told by Lewis that it was a mistake and that he would take care of it.

Presented with this evidence, a jury convicted Lewis of four counts of theft by taking. Lewis argues on appeal that the evidence was insufficient to support his conviction because he wrote the company checks with Shipley's knowledge and consent and with the intent of paying it back.

Under Georgia law, "[a] person commits the offense of theft by taking when he unlawfully takes or, being in lawful possession of, unlawfully appropriates any property of another with the intention of depriving him of the property, regardless of the manner in which the property is taken or appropriated." OCGA § 16-8-2. Intent to use another's property without the owner's authorization evinces an intent to commit a theft, regardless of whether the individual intends to withhold the property permanently. *Mullinax v. State*, 273 Ga. 756, 758 (1) (b) (545 SE2d 891) (2001); *Tate v. Holloway*, 231 Ga. App. 831, 834 (499 SE2d 72) (1998). Indeed, "[o]nce criminal intent at the time of taking is proven, it becomes irrelevant whether the deprivation is permanent or temporary." *Chastain v. State*, 244 Ga. App. 84, 85 (1) (535 SE2d 25) (2000). See OCGA § 16-8-1.

Lewis testified at trial and admitted to writing nearly all of the company checks listed above, even though he claimed that Shipley had knowledge of and authorized the expenditures. Shipley admitted that on one occasion, he gave Lewis permission to borrow money from Marietta Finance on a Saturday, to be repaid the following Monday. Shipley's review of the business records the following Monday reflected that Lewis claimed to have repaid the money, although Winkles' subsequent investigation revealed that he had not. With that single exception, Shipley denied knowing or giving Lewis permission to write any of the company checks presented at trial or giving him the authority to use the company's money for his or his family's personal use.

Lewis's conviction is clear evidence that the jury did not credit Lewis's testimony, and his denial of criminal intent does not render the otherwise overwhelming evidence against him insufficient. "A jury is authorized to believe or disbelieve all or any part of the testimony of witnesses, and it serves as the arbiter of conflicts in the evidence before it." (Punctuation and footnote omitted.) *Bakyayita v. State*, 278 Ga. App. 624, 628 (3) (629 SE2d 539) (2006). See *Terrell v. State*, 275 Ga. App. 501, 503 (621 SE2d 515) (2005). The evidence set forth above was more than sufficient to authorize the jury's finding beyond a reasonable doubt that Lewis committed the crime of theft by taking as set forth in the indictment. *Chastain*, 244 Ga. App. at 85 (1); *Terrell*, 275 Ga. App. at 503; *Frost v. State*, 269 Ga. App. 54, 56 (1) (603 SE2d 481) (2004); *In the Interest of M. C. A.*, 263 Ga. App. 770, 771 (1) (589 SE2d 331) (2003).

*Judgment affirmed. Blackburn, P. J., and Ruffin, J., concur.*

DECIDED AUGUST 30, 2007.

*Patrick G. Longhi,* for appellant.
*Patrick H. Head, District Attorney, John R. Edwards, Assistant District Attorney,* for appellee.