### A11A1430. BAKER v. THE STATE.
(716 SE2d 580)

MIKELL, Judge.

After a bench trial, Ronald Baker was convicted of theft by taking and sentenced to five years, to serve twelve months in confinement and the remainder on probation, with credit for time served. The trial court denied Baker's motion for new trial, and Baker appeals, raising the general grounds. We affirm.

> On appeal from a bench trial resulting in a criminal conviction, we view all evidence in the light most favorable to the trial court's judgment of conviction, and the defendant no longer enjoys the presumption of innocence. We do not re-weigh testimony, determine witness credibility, or address assertions of conflicting evidence; our role is to determine whether the evidence presented is sufficient for a rational trier of fact to find guilt beyond a reasonable doubt.[1]

Properly viewed, the record shows that Baker was an employee of Mizuno USA, Inc., a manufacturer and distributor of sporting goods. He worked in the "raw materials cage," a fenced-in area where components were stored prior to final assembly into sporting goods. Patricia Douglas, Mizuno's director of human resources and general affairs, testified that Mizuno had experienced thefts from its raw materials cage; and that Mizuno had retained Norrad, a corporate security company, to conduct an investigation. Norrad assigned its employee Eustace Xavier to pose as a Mizuno employee and investigate the thefts.

Xavier testified that he got to know Baker and that Baker

---

[1] (Citation and punctuation omitted.) *Mays v. State*, 306 Ga. App. 507 (703 SE2d 21) (2010).

arranged to take golf club heads from the Mizuno facility, sell them, and split the proceeds with Xavier. On the afternoon of September 13, 2002, Baker told Xavier that he had taken some items and hidden them, intending to pick them up later. That evening, Baker and Xavier returned to the Mizuno plant, where Baker retrieved two boxes from a trash bin, loaded them into the car, and took them back to Baker's apartment. Baker opened one of the boxes, which contained 50 "Blue Rage" golf club heads. Baker then divided the club heads equally, keeping 25 for himself and giving 25 to Xavier as Xavier's "share of the deal" for giving him a ride. Baker did not open the other box. He explained that it contained metal heads "for someone else." Xavier left Baker's apartment with the 25 club heads which were his "share" and turned them over to Philip Gallacher, Xavier's Norrad supervisor. Baker was later arrested and charged with theft by taking. Baker testified at trial, denying that the events testified to by Xavier ever took place and asserting that he had never stolen anything from Mizuno.

Baker challenges the sufficiency of the evidence supporting his conviction for theft by taking. "A person commits the offense of theft by taking when he unlawfully takes or, being in lawful possession thereof, unlawfully appropriates any property of another with the intention of depriving him of the property, regardless of the manner in which the property is taken or appropriated."[2] The evidence adduced at trial and summarized above, viewed in the light most favorable to the verdict, amply supports Baker's conviction for theft by taking.

1. Baker contends that Mizuno consented to the taking at issue here, because Gallacher informed Douglas that a theft was planned, and Douglas allowed the plan to proceed in order to further the investigation. This argument is wholly without merit. The fact that Mizuno retained Norrad to investigate the thefts shows that Mizuno did not consent to them. Douglas testified that Baker was never given permission to abscond with this merchandise. Baker's conviction shows that the trial court, as finder of fact, gave credit to this testimony.[3]

2. Baker also argues that there was insufficient evidence showing the value of the items taken. Although value is not an element of the offense of theft by taking, it is relevant for purposes of sentencing, as a felony sentence may be imposed "[i]f the property which

---

[2] OCGA § 16-8-2.

[3] See *Lewis v. State*, 287 Ga. App. 379, 381 (651 SE2d 494) (2007) (whether defendant made expenditures with victim's consent was question for jury).

was the subject of the theft exceeded $500.00 in value."[4]

Douglas testified that these particular club heads were kept in Mizuno's raw materials cage and were not available for sale in their unassembled state. She further testified that the club heads were the property of Mizuno; that the box bore labels indicating that they had been delivered to Mizuno from Japan; that the club heads cost $203 each wholesale; and that their value was $203 each. The club heads were in brand-new condition, still wrapped in plastic, and were awaiting attachment to shafts and assembly into completed golf clubs.

"The cost of the property to the owner, although relevant on the question of value, is not the ultimate determinant."[5] However, "cost price, if coupled with other evidence, may be admitted as an element upon which an opinion may be formed as to the item's value."[6] And "[a]n owner does not have to be an expert to testify as to the value of his property [or that property under his control], provided he has experience or familiarity with such values."[7] In the case at bar, Douglas testified regarding her general knowledge of Mizuno's business and the manufacturing process utilized in producing golf clubs at Mizuno's facility. She also testified that she was responsible for assessing and investigating the losses of raw materials, including Blue Rage golf club heads, that Mizuno had incurred. Through this testimony, Douglas established that she had "knowledge, experience and familiarity with the value of the property."[8] The evidence was sufficient for the court to determine that the value of the items stolen at the time and place of the theft exceeded $500.[9]

*Judgment affirmed. Smith, P. J., and Dillard, J., concur.*

DECIDED AUGUST 26, 2011.

*John R. Burdges*, for appellant.

*Daniel J. Porter, District Attorney, Justin D. Unger, James V. Branch, Assistant District Attorneys*, for appellee.

---

[4] OCGA § 16-8-12 (a) (1).

[5] (Punctuation and footnote omitted.) *Partin v. State*, 302 Ga. App. 589, 590 (692 SE2d 32) (2010).

[6] (Punctuation and footnote omitted.) Id.

[7] *Williams v. State*, 246 Ga. App. 347, 352 (2) (540 SE2d 305) (2000).

[8] (Citations omitted.) *Pippin v. State*, 166 Ga. App. 658, 659 (305 SE2d 408) (1983).

[9] See *Partin*, supra at 591.