**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**May 22, 2013**

# In the Court of Appeals of Georgia

A13A0325. CALCATERRA v. THE STATE.            DO-013 C

DOYLE, Presiding Judge.

After a jury trial, Nakenya L. Calcaterra was convicted of possession of cocaine with intent to traffic[1] and possession of marijuana with intent to distribute.[2] She appeals, arguing that the trial court erred by denying her motion to suppress the evidence because her consent to search was the product of an unreasonably prolonged detention. For the reasons that follow, we affirm.

On appeal from a ruling on a motion to suppress, we must construe the evidence most favorably to affirming the trial court's factual findings and judgment. We accept the trial court's factual and credibility determinations unless they are clearly erroneous, and the

---

[1] OCGA § 16-13-31 (a).

[2] OCGA § 16-13-30 (j) (1).

factual findings will be upheld if they are supported by any evidence. The trial court's application of the law to undisputed facts, however, is subject to a de novo standard of review.[3]

At the motion to suppress hearing, Officer Kevin Turner testified that he was patrolling parts of Gordon County and traveling northbound on I-75 at approximately 9:40 p.m. on March 27, 2012. Officer Turner observed a vehicle with a Virginia license plate move from the center lane of travel to the far left lane. Thereafter, Turner observed the driver, Calcaterra, cross the far left "fog" line three times. The officer moved into the lane behind Calcaterra, who then moved back to the center lane of travel, at which point, Turner moved behind her and activated his blue lights to effectuate a stop for failure to maintain lane.

After Calcaterra pulled to the side of the express-way, the officer called dispatch about the stop, and he approached the vehicle from the passenger side. Calcaterra presented Turner her Illinois driver's license, and Turner asked if she owned the vehicle. Calcaterra stated that her brother-in-law owned the vehicle, but when Turner asked for a copy of the registration, Calcattera backtracked, stating that

---

[3] (Punctuation omitted.) *Hall v. State*, 306 Ga. App. 484 (702 SE2d 483) (2010).

the vehicle was a rental, presenting a rental agreement originating in Ohio, which she stated was taken out by her brother-in-law. At that point, Officer Turner asked Calcaterra to step to the back of the vehicle so that he could further investigate whether she had been drinking or was impaired based on her manner of driving. "In order to calm her down," he asked what "brought her to the [S]tate of Georgia," and while she first said she was visiting her brother-in-law, she later said she was visiting her stepbrother.

Officer Turner explained to Calcaterra that he had stopped her because she had crossed over the fog line three times, but he was going to write her a warning instead of a ticket. At this point, Turner realized that the rental agreement showed that the vehicle had been due back in the first week of March (the stop occurred on March 27), so he asked Calcaterra who "Gary Owens," the name listed on the rental agreement was and who her passenger was. Calcaterra explained that Owens was her brother-in-law, and he often rented vehicles and allowed her to use them. She stated that her passenger was a friend who had been staying in Georgia but wanted a ride back to Ohio when he heard she was headed that way.

During the stop, another cruiser with two other officers arrived on the scene and parked behind Turner's car. Officer Turner asked the passenger for his

3

identification, but the man could not produce any. He stated his name was Mark Calcaterra, and in response to Turner's question about how he knew Nakenya Calcaterra, he stated that they had been married since 2005. Calcaterra and Mark also gave different accounts of the date upon which they had traveled to Georgia. Based on all the conflicting information, and the unclear status of the vehicle, Officer Turner suspected that the individuals might have contraband in the vehicle, and he asked both Calcaterra and Mark for consent to search the vehicle, which they both provided.

After Mark exited the vehicle and was patted down for weapons, Officer Turner searched the vehicle and discovered 1.54 pounds of cocaine and over a pound of marijuana in the trunk.

Calcaterra argues that the trial court erred by denying her motion to suppress. We disagree.

> An officer may conduct a brief investigatory stop of a vehicle if such stop is justified by specific, articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct. The specific articulable suspicion must be based on the totality of the circumstances – objective observations, known patterns of certain kinds of lawbreakers, and

inferences drawn and deductions made by trained law enforcement personnel.[4]

In this case, Officer Turner witnessed Calcaterra's vehicle cross the left-hand fog line three times. Such conduct provided Turner with probable cause to stop Calcaterra because the conduct is a violation of OCGA § 40-6-48 (1), which states that "[a] vehicle shall be driven as nearly as practicable entirely within a single lane . . . ."[5] Moreover, this Court has repeatedly held that failure to maintain lane "may give rise to reasonable articulable suspicion on the part of a trained law enforcement officer that the driver is violating the DUI laws."[6] Although Calcaterra contends that Turner's account of her failure to maintain lane was not believable because he did not activate his dashboard camera after the first instance when she crossed the fog line, because he did not contact dispatch to investigate the status of the vehicle, and because he admitted on cross-examination that he proactively seeks out illegal activity when stopping individuals as he patrols the interstate, this argument is

---

[4] (Punctuation omitted.) *Ivey v. State*, 301 Ga. App. 796, 797 (689 SE2d 100) (2009).

[5] See *Acree v. State*, 319 Ga. App. 854, 854-855 (737 SE2d 103) (2013).

[6] (Punctuation omitted.) Id. at 798. See also *Davis v. State*, 236 Ga. App. 32, 33 (1) (510 SE2d 889) (1999).

unpersuasive. The trial court was authorized to find that Officer Turner observed the violations.[7] Thus, the initial traffic stop of Calcaterra was lawful.[8]

Calcaterra also argues that the stop was unreasonably prolonged when Officer Turner began questioning her on details unrelated to the issue of writing a citation for failure to maintain lane, and that the arrival of the other officers and the prolonged investigation resulted in invalid consent given for the search of the vehicle, and therefore, the trial court erred by denying her motion to suppress. We disagree.

> The Fourth Amendment is not violated when, during the course of a valid traffic stop, an officer questions the driver or occupants of a vehicle and requests consent to conduct a search. The dispositive factor is not the nature or subject of the officer's questioning, but whether that questioning takes place during an otherwise lawful detention, such as, in this case, for committing a traffic violation in the officer's presence. In order to pass constitutional muster, the duration of a traffic stop cannot be unreasonably prolonged beyond the time required to fulfill the purpose of the stop. A reasonable time to conduct a traffic stop includes the time necessary to verify the driver's license, insurance, and registration, to complete any paperwork connected with the citation or

---

[7] See *Hall*, 306 Ga. App. at 485-486 (1).

[8] See *Ivey*, 301 Ga. App. at 798.

a written warning, and to run a computer check for any outstanding arrest warrants for the driver or the passengers.[9]

In this case, as stated earlier, the initial stop of Calcaterra was supported by the officer's observation of her traffic violation. Moreover, the officer had a reasonable articulable suspicion that Calcaterra might be violating DUI laws because of her repeated failure to maintain lane.[10] Thereafter, while Officer Turner investigated whether the vehicle, which had Virginia plates, was properly in Calcaterra's possession even though she had presented him with an Illinois driver's license, Officer Turner was presented with numerous inconsistencies in her story and the statements of her passenger, which provided support for further investigation.[11] During the reasonable investigation into these inconsistencies, Officer Turner asked for consent to search the car, which consent Calcaterra, as the driver of the vehicle, validly provided to the officer.[12]

---

[9] (Citations and punctuation omitted.) *Hall*, 306 at 486 (2).

[10] See *Ivey*, 301 Ga. App. at 798; *Davis*, 236 Ga. App. at 33 (1).

[11] See *Rocha v. State*, 317 Ga. App. 863, 866-867 (1) (733 SE2d 38) (2012). We note that Officer Turner asked for this consent within ten minutes of initially stopping Calcaterra.

[12] See *Hall*, 306 Ga. App. at 487 (3).

Accordingly, the trial court did not err by denying Calcaterra's motion to suppress.

*Judgment affirmed. McFadden and Boggs, JJ., concur.*