**SECOND DIVISION**
**ANDREWS, P. J.,**
**MCFADDEN and RAY, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 19, 2015**

# In the Court of Appeals of Georgia

A14A2181. GRIFFITH v. THE STATE.

McFADDEN, Judge.

After being indicted for various drug-related offenses, Joe Travis Griffith moved to suppress evidence found in a search of his vehicle during a traffic stop. The trial court denied the motion, and we granted interlocutory review of that ruling. Because Griffith admitted to having drugs in his vehicle during the course of an otherwise lawful traffic stop that had not been unreasonably prolonged, we affirm.

"When reviewing the trial court's denial of a motion to suppress, the evidence is construed most favorably to uphold the trial court's findings and judgment. And if there is any evidence to support the trial court's findings on disputed facts and credibility, they will not be disturbed unless clearly erroneous." *Betancourt v. State*,

322 Ga. App. 201, 204 (2) (744 SE2d 419) (2013) (citations and punctuation omitted).

So viewed, the evidence showed that on the morning of March 19, 2013, a law enforcement officer stopped Griffith for driving a vehicle with improperly tinted windows. Immediately upon stopping the vehicle, the officer radioed dispatch to check Griffith's out-of-state license tag. Then, as the officer first waited for Griffith to produce his driver's license and then wrote Griffith a warning for the tint violation, the officer questioned Griffith, who told a rambling, inconsistent story about why he was driving on the stretch of highway where he was stopped. After the officer finished writing the warning, but before he had received the results of the tag check from dispatch, the officer made a comment to Griffith about the prevalence of crime on that stretch of highway and then asked Griffith if he had anything illegal in his vehicle. Griffith admitted that he had a meth pipe and methamphetamine in the vehicle, and the officer arrested him. The arrest occurred less than 13 minutes from the start of the traffic stop. Based on Griffith's statement, the officer searched the vehicle and found a meth pipe and methamphetamine.

Griffith does not dispute the validity of the traffic stop, but he argues that the officer unreasonably prolonged it. An investigatory stop of a vehicle "cannot be unreasonably prolonged beyond the time required to fulfill the purpose of the stop."

2

*Sommese v. State*, 299 Ga. App. 664, 668 (1) (683 SE2d 642) (2009). But such claims, as our Supreme Court has explained,

> are of two sorts. In some cases, a detention is prolonged beyond the conclusion of the investigation that warranted the detention in the first place, and in those cases, the courts generally have concluded that such a prolongation – even a short one – is unreasonable, unless, of course, good cause has appeared in the meantime to justify a continuation of the detention to pursue a different investigation. In other cases, the detention is not prolonged beyond the conclusion of the investigation that originally warranted the detention, but it is claimed that the investigation took too long, perhaps because the officer spent too much time inquiring about matters unrelated to the investigation. In these cases, the courts examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant.

*Rodgriguez v. State*, 295 Ga. 362, 369 (2) (b) (761 SE2d 19) (2014) (citations and punctuation omitted).

This case presents the second sort of claim. The officer had finished writing a warning for the window tint violation, but he had not yet received information from the tag check, which among other things he needed to verify Griffith's insurance status because Griffith had not been able to produce an insurance card. A reasonable traffic stop

3

generally includes the time necessary to verify the driver's license, insurance, registration; to complete any paperwork connected with the citation or a written warning; and to run a computer check to determine whether there are any outstanding arrest warrants for the driver or the passengers.

*Betancourt*, 322 Ga. App. at 204 (2) (a) (citations and punctuation omitted); accord *Salmeron v. State*, 280 Ga. 735, 737 (1) (632 SE2d 645) (2006). Because the officer had not yet completed all of these tasks, the stop had not concluded. See *Bowens v. State*, 276 Ga. App. 520, 521 (623 SE2d 677) (2005) (traffic stop for seat belt violation was still in progress when drug dog alerted on car door, because officer was running computer check on appellant's license and registration). For this reason, cases cited by Griffith that involve a detention following the conclusion of a traffic stop, such as *Heard v. State*, 325 Ga. App. 135, 138 (1) (751 SE2d 918) (2013), and *Nash v. State*, 323 Ga. App. 438, 442-443 (746 SE2d 918) (2013), are inapposite.

The hearing evidence permitted the trial court to find that the officer did not unreasonably prolong the stop as he performed the tasks associated with it. See generally *Moore v. State*, 321 Ga. App. 813, 815 (743 SE2d 486) (2013) (regarding deference given to trial court's determination of whether stop was unreasonably prolonged). While performing such tasks, an officer "may question the occupants and

4

request consent to conduct a search of the vehicle, so long as the officer's questioning does not impermissibly prolong the otherwise lawful detention." *Betancourt*, 322 Ga. App. at 204-205 (2) (a) (citation omitted); see *Calcaterra v. State*, 321 Ga. App. 874, 876-877 (743 SE2d 534) (2013) (permitting officer, during otherwise lawful stop, to ask questions unrelated to issue of writing citation for violation that was basis of stop); see generally *Salmeron*, 280 Ga. at 736 (1) (dispositive factor was not nature or subject of officer's questioning but whether it occurred during otherwise lawful detention).

In this case, less than 13 minutes elapsed between the start of the traffic stop and Griffith's arrest. The video recording of the stop reflects the officer actively engaging in tasks related to the purpose of the stop during those 13 minutes. As he talked with Griffith, the officer obtained Griffith's driver's license from him, tested the tint of Griffith's windows, discussed the window tint violation with him, and wrote a warning for that violation. Moreover, the officer initiated the check of Griffith's tag at the very beginning of the stop and determined that the check would be needed to verify Griffith's insurance. Compare *Bodiford v. State*, 328 Ga. App. 258, 262-263 (1) (761 SE2d 818) (2014) (officer waited until after he had completed all other aspects of investigation before initiating check of appellant's driver's license

5

and then refused to have further contact with dispatch). While "a delay in the . . . response time [to a check] would not justify [Griffith's] detention indefinitely," *Betancourt*, 322 Ga. App. at 205 (2) (a), "the police are not constitutionally required to move at top speed or as fast as possible. At a traffic stop, the police can occasionally pause for a moment to take a breath, to think about what they have seen and heard, and to ask a question or so." *Rodriguez*, 295 Ga. at 371 (2) (b) (citation and punctuation omitted). Under the circumstances of this case, "we agree with the trial court that the detention was not unreasonably prolonged beyond the time required to fulfill the purpose of the traffic stop. [Cits.]" *Betancourt*, 322 Ga. App. at 205 (2) (a) (20-minute detention not unreasonably prolonged where officer had not yet received computer information confirming appellants' identities and the status of the driver's license; citing other cases with similar facts for same proposition).

*Judgment affirmed. Andrews, P. J., and Ray, J., concur.*

6