**SECOND DIVISION**
**DOYLE, C. J.,**
**MILLER, P. J., and REESE, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 7, 2017**

# In the Court of Appeals of Georgia

A17A0446. CALCATERRA v. THE STATE.

REESE, Judge.

A Gordon County jury found Mark Calcaterra guilty beyond a reasonable doubt of trafficking in cocaine, OCGA § 16-13-31 (a) (1) (C), and possession of marijuana with intent to distribute, OCGA § 16-13-30 (j) (1). He appeals from the trial court's denial of his motion for new trial, contending that there was insufficient evidence to support his conviction. For the reasons set forth, infra, we affirm.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict and an appellant no longer enjoys the presumption of innocence. This Court determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*,[1] and does not weigh the evidence or determine witness credibility. Any conflicts or

---

[1] 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

inconsistencies in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, we must uphold the jury's verdict.[2]

Viewed in this light, the evidence showed that, at approximately 9:40 p.m. on March 27, 2012, the Appellant was a passenger in a car driven by his wife, Nakenya Calcaterra (hereinafter, "Ms. Calcaterra"), as they traveled northbound on I-75 in Gordon County. A law enforcement officer conducted a traffic stop,[3] approached the passenger side of the car, and obtained Ms. Calcaterra's Illinois driver's license. When the officer asked Ms. Calcaterra if she owned the vehicle, she first said that it belonged to her brother-in-law. When the officer asked her for the registration, however, she backtracked and said that her brother-in-law had rented the car and loaned it to her. The rental agreement showed that a person named "Gary Owens" had rented the car in Ohio.[4] According to the officer, while he was speaking with Ms.

---

[2] *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004) (citations omitted).

[3] A video-recording of the stop was played for the jury at trial.

[4] At trial, the State showed that the Appellant had a brother named Gary Owens and that Owens lived in Ohio.

Calcaterra, he observed that the Appellant was looking straight ahead, his hands were "clench[ing]" a cell phone, and he did not participate in the conversation.

The officer asked Ms. Calcaterra to step out of the vehicle so he could determine if she was impaired, and she complied. The officer asked her why she had traveled to Georgia, and Ms. Calcaterra gave conflicting answers about when she had driven down and whom she had been visiting. She also told the officer that her passenger was a friend who had traveled with her on the trip, but then immediately told him, instead, that her friend had been staying in Georgia before she came down and that he was now riding back to Ohio with her.

The officer walked to the passenger-side window and asked the Appellant if he had any identification. The Appellant responded that he did not, but said that his name was Mark Calcaterra. When asked how he knew Ms. Calcaterra, the Appellant said that she was his wife and that they had been married since 2005. The Appellant expressed surprise when the officer told him that Ms. Calcaterra had said he was just a friend. When asked why he was in Georgia, the Appellant told the officer that he came down to visit family members.

Based upon the couple's inconsistent responses, the officer suspected that there might be contraband in the vehicle, and he obtained the consent of both Ms.

3

Calcaterra and the Appellant to search the car. When the officer started looking around the passenger compartment of the car, he smelled an odor that he recognized as the smell of raw marijuana. While searching the trunk, the officer observed two small, plastic grocery bags – one containing men's clothing and the other containing women's clothing. The officer also discovered over 554 grams of cocaine of at least 60 percent purity and over 445 grams of marijuana hidden in the trunk's side panels.[5]

The officer arrested the Appellant and Ms. Calcaterra, and the State jointly indicted them, charging them with trafficking in cocaine and possession of marijuana with intent to distribute. In addition to the evidence concerning the traffic stop, as recounted above, the following evidence was presented during their joint trial.

The Appellant and his wife had seven children between the ages of five months and eighteen years, as well as two grandchildren. In March 2012, the Appellant was physically disabled and was not employed, while Ms. Calcaterra worked delivering pizza. The couple was experiencing financial troubles and were behind in paying their rent, car payment, and other bills to the extent that they were feeling "desperate." According to Ms. Calcaterra, the financial problems were causing her and the

---

[5] This Court affirmed the trial court's denial of Ms. Calcaterra's motion to suppress, which had challenged the legality of the traffic stop and the detention that followed. See *Calcaterra v. State*, 321 Ga. App. 874 (743 SE2d 534) (2013).

Appellant to fight a lot, so they decided to take a "spur-of-the-moment" trip "to get away for a little while" and spend time together.

The couple borrowed a car from the Appellant's brother, left their children and grandchildren in his care, and started driving to Georgia just after midnight on March 27, 2012. They drove to the home of the Appellant's cousin in Atlanta, arriving at about 10:00 a.m. The couple took a nap, and then the Appellant watched television with his cousin for the rest of the day. Ms. Calcaterra, however, left for a few hours before returning to the cousin's house that evening. She picked up the Appellant, and they started driving back to Ohio. As they were leaving, the Appellant told his cousin that he had to "go handle some business." They then traveled for less than an hour before the traffic stop took place. In addition, Ms. Calcaterra admitted that, despite their serious financial troubles, they spent at least $140 on gas and food between leaving Ohio around midnight and the traffic stop later that evening, for the sole purpose of spending a few hours with family members.

After considering the evidence, the jury found both the Appellant and Ms. Calcaterra guilty of trafficking in cocaine and possession of marijuana with intent to

5

distribute.[6] The trial court denied the Appellant's motion for new trial, and this appeal followed.

The Appellant argues that the evidence showed that he was merely present in the car and did not know that the drugs were hidden in the trunk.[7]

> A participant to a crime may be convicted although he is not the person who directly commits the crime. A person who intentionally aids or abets in the commission of a crime or intentionally advises, encourages, hires, counsels or procures another to commit the crime may be convicted of the crime as a party to the crime. Mere presence at the scene is not sufficient to convict one of being a party to a crime, but criminal intent may be inferred from conduct before, during, and after the commission of a crime.[8]

---

[6] Ms. Calcaterra unsuccessfully appealed her conviction. See *Calcaterra*, 321 Ga. App. at 874-877.

[7] The record shows that the trial court instructed the jury on, inter alia, circumstantial evidence, parties to a crime, mere presence, mere association, knowledge, criminal intent, active and constructive possession of contraband, and joint possession.

[8] *Huntley v. State*, 331 Ga. App. 42, 43 (1) (769 SE2d 757) (2015) (citation and punctuation omitted). See also OCGA §§ 16-2-6 (The trier of fact may find that a person acted with criminal intent through "consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act" for which the person is being tried.); 16-2-20 (a), (b) (3) (when a person may be convicted as a party to a crime).

In support of his "mere presence" argument on appeal, the Appellant relies solely on his wife's exculpatory trial testimony. Ms. Calcaterra testified that, during a stop at a gas station on the way to Georgia, her step-brother called her on her cell phone while the Appellant was in the station buying food. According to Ms. Calcaterra, her step-brother asked her to do him a "favor," offering to pay her $2,000. She did not ask what the favor was, nor did she tell the Appellant about the call. After arriving at the Appellant's cousin's home and taking a quick nap, Ms. Calcaterra left and went to her step-brother's home, which was a few minutes away in Decatur. Her step-brother asked her to transport some drugs to Ohio, and, when she agreed, he hid the drugs in the car's trunk. Ms. Calcaterra then picked up the Appellant at his cousin's house and started driving back to Ohio. She testified that she did not tell the Appellant about the drugs in the trunk or the money she was paid because she knew he would not have approved of what she was doing.

During her testimony, however, Ms. Calcaterra contradicted herself as to whether the couple's ten-hour trip to Georgia had been a "spur-of-the-moment" idea or had been planned in advance. And, during cross-examination by the State, Ms. Calcaterra admitted that, in the four months since she and her husband had been

7

arrested, she had never told authorities that her husband was innocent or otherwise tried to exonerate him.

The issue of whether the Appellant was a party to the crimes by aiding and abetting Ms. Calcaterra in the commission of the drug offenses was a question for the jury to decide.[9] Further, "[a] jury is authorized to believe or disbelieve all or any part of the testimony of witnesses, and it serves as the arbiter of conflicts in the evidence before it."[10] Thus, the jury was authorized to reject as incredible Ms. Calcaterra's testimony regarding the couple's reasons for traveling to Georgia and her claim that the Appellant had no knowledge of the crimes she was committing.[11]

---

[9] See *Huntley*, 331 Ga. App. at 43 (1).

[10] *Lewis v. State*, 287 Ga. App. 379, 381 (651 SE2d 494) (2007) (citations and punctuation omitted).

[11] See *Lewis*, 287 Ga. App. at 381; see also *Gordon v. State*, 329 Ga. App. 2, 4 (1) (763 SE2d 357) (2014) (The jury determines the credibility of the witnesses and, thus, was authorized to disbelieve the defense offered by the defendant.); *Gaskins v. State*, 318 Ga. App. 8, 11 (1) (b) (733 SE2d 338) (2012) (The jury was authorized to disbelieve the defendant's explanation for how she obtained the property and to conclude that she obtained it fraudulently.); see generally *Buruca v. State*, 278 Ga. App. 650, 653 (1) (629 SE2d 438) (2006) (The evidence, although circumstantial, was sufficient for the jury to find that the defendant was the "getaway" driver who assisted others in committing an armed robbery and, as a result, to convict him as a party to the crime, noting that the jury "heard and clearly rejected [the defendant's] claim that the robbery was a spur of the moment idea of which he had no knowledge.") (punctuation omitted).

Consequently, after viewing the evidence in the light most favorable to the jury's verdict,[12] we conclude that it was sufficient for the jury to find that the Appellant was guilty beyond a reasonable doubt as a party to the crimes committed by Ms. Calcaterra.

*Judgment affirmed. Doyle, C. J., and Miller, P. J., concur.*

---

[12] See *Rankin*, 278 Ga. at 705.